[Nos. 74147-6; 75053-0; En Banc.]
75063-7.
Argued November 9, 2004. Decided April 14, 2005.

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL D. HUGHES, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE LEONARD SELVIDGE, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL RAY ANDERSON, *Petitioner*.

---

120

*Daniel D. Hughes*, *George L. Selvidge*, and *Michael R. Anderson*, pro se.

*John L. Farra*, for appellant Hughes.

*Thomas E. Doyle* and *Patricia A. Pethick*, for petitioner Selvidge.

*Peter B. Tiller*, for petitioner Anderson.

*H. Steward Menefee*, *Prosecuting Attorney for Grays Harbor County*, and *Craig Juris, Deputy*; *Edward G. Holm*, *Prosecuting Attorney for Thurston County*, and *Steven C. Sherman, Deputy*; and *Jeremy R. Randolph, Prosecuting Attorney for Lewis County*, and *J. Andrew Toynbee, Deputy*, for respondent.

*Rita J. Griffith* and *James E. Lobsenz* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

*Brian M. McDonald* and *James M. Whisman* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

¶1 FAIRHURST, J. — The United States Supreme Court recently applied its reasoning in *Apprendi v. New Jersey*,

530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to hold that any fact other than that of a prior conviction, which increases the applicable punishment, must be found by a jury beyond a reasonable doubt (unless it is stipulated to by the defendant or the defendant waives his right to a jury finding). *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).[1]

¶2 These three cases were consolidated to address (1) the continuing validity of the exceptional sentence provisions of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW; (2) whether the exceptional sentences at issue here violated the petitioners' Sixth Amendment jury trial rights; (3) whether *Blakely* Sixth Amendment violations can ever be deemed harmless; and (4) what is the proper remedy if we find Sixth Amendment violations that are not harmless.

¶3 We hold that the exceptional sentence provisions of the SRA are facially constitutional but that the exceptional sentences at issue violated petitioners' Sixth Amendment rights. Because we also hold that *Blakely* Sixth Amendment violations can never be harmless and that empanelling juries on remand for resentencing would usurp the legislature's authority, we remand for imposition of standard range sentences.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Michael Ray Anderson

¶4 As a result of allegations that Michael Ray Anderson sexually molested his stepdaughter for several years, the Lewis County Prosecutor's Office charged Anderson with 10 counts of third degree rape of a child. Anderson subsequently pleaded guilty to one count of first degree child molestation, one count of second degree child molestation, and one count of incest, relying on the State's recommendation to sentence within the standard range.

---

[1] The Supreme Court subsequently applied its holding in *Blakely* to the Federal Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Although we take notice of that decision here, its reasoning is generally inapplicable to our analysis.

¶5 Following Anderson's guilty plea, the judge ordered a presentence investigation report (PSIR). The standard range sentences for Anderson's offenses were 98-130 months for count I, 57-75 months for count II, and 46-61 months for count III. Anderson sought special sex offender sentencing alternative (SSOSA) treatment in lieu of some of his prison sentence. In furtherance of that alternative treatment, Anderson was evaluated by a sex offender treatment provider, whose report supporting SSOSA treatment was filed with the court. But in its PSIR the Department of Corrections recommended that Anderson not receive an alternative SSOSA sentence and instead recommended an exceptional sentence of 240 months, with 36-48 months of community custody following release. The State opposed an alternative SSOSA sentence and recommended sentencing only within the standard range, consistent with the plea agreement.

¶6 The trial judge denied Anderson's request for SSOSA sentencing and imposed an exceptional sentence of 240 months for count I and the maximum of the standard range for counts II and III (75 and 61 months, respectively). To do so, the judge found facts supporting aggravating factors any one of which, concluded the judge, could have supported the sentence. Those aggravating factors were:

(1) A particularly vulnerable victim;

(2) An on-going pattern of sexual abuse;

(3) Use of a position of trust to perpetuate the offenses;

(4) An abuse of trust;

(5) An offense that involved a high degree of sophistication, planning, and grooming; and

(6) Operation of the multiple offense policy of RCW 9.94A.589 would result in a presumptive sentence that is clearly too lenient in light of the purposes of the SRA.

The conclusion of excessive leniency of the multiple offense policy was based on Anderson's multiple current convictions being counted as prior convictions, as provided in RCW 9.94A.589(1)(a).

¶7 Anderson appealed his conviction to Division Two of the Court of Appeals. Commissioner Ernetta Skerlec found no nonfrivolous issues for review and affirmed the conviction. The Court of Appeals subsequently denied Anderson's motion to modify the commissioner's ruling. Anderson filed a petition for review with this court. The United States Supreme Court then decided *Blakely* and Anderson filed a supplemental petition raising *Blakely* issues. This court granted Anderson's petition on the *Blakely* issues only and consolidated it with *Selvidge* and *Hughes*.

## B. George Leonard Selvidge

¶8 Based on allegations that George Leonard Selvidge sexually molested his niece and her friend, the Thurston County Prosecutor's Office charged Selvidge with two counts of first degree child molestation. The trial court convicted him of each count. The standard range sentence for each count was 149 to 198 months. The trial court imposed an exceptional sentence of 222 months for each count and stated that the following aggravating circumstances warranted the sentence:

(1) Selvidge was given child care responsibilities, which constituted a position of trust, and he violated that trust;

(2) Selvidge had more than nine points from prior convictions, which would allow the current offense to have no punishment. The "current sentence range was clearly too lenient in light of the purposes of the SRA"; and

(3) "There is no reasonable possibility that the defendant will be benefited from rehabilitation."

Clerk's Papers (CP) (Selvidge) at 40. The court further specified that any one of those factors warranted the exceptional sentence imposed. Additionally, the court imposed a lifetime term of community custody, which also was exceptional.

¶9 Selvidge appealed his conviction to the Court of Appeals, challenging the sufficiency of the evidence and the imposition of an exceptional community custody sentence.

Commissioner Eric Schmidt granted the State's motion to affirm the trial court's conviction on the merits. Division Two of the Court of Appeals subsequently denied Selvidge's motion to modify the commissioner's ruling.

¶10 Selvidge then filed a petition for review with this court. During that time, the United States Supreme Court decided *Blakely*. Like Anderson, Selvidge then moved to file a supplemental petition raising *Blakely* issues. This court granted that motion and subsequently granted review of the *Blakely* issues only and consolidated his case with *Anderson* and *Hughes*.

## C. Daniel D. Hughes

¶11 Daniel D. Hughes was charged with first degree theft for cutting down old growth cedar trees. Hughes was found guilty of first degree theft.

¶12 At trial, a forest technician testified that the market value of the trees taken was $4,465. Report of Proceedings (RP) (Apr. 15, 16, 2003) at 83. However, at the sentencing hearing, a United States Forest Service ecologist testified that the actual value of the trees stolen, consisting of both monetary and ecological components, was $145,599. RP (May 23, 2003) at 13. Based on Hughes' offender score, the standard range sentence would have been three to nine months. The trial court imposed an exceptional sentence of 90 months. In support of that exceptional sentence, the court made the following relevant conclusions:

(1) The facts at issue were "sufficiently substantial and compelling to distinguish [the] crime from other theft in the first degree";

(2) The crime was a "major economic offense" because "the actual monetary loss of the victim was substantially greater than typical for Theft in the First Degree";

(3) "The harm to the environment was severe, and not considered by the Legislature in setting the standard range";

(4) The defendant's "rapid recidivism" was another aggravating factor, which also was "not considered by the Legislature in setting the standard range";

(5) The defendant's "ongoing pattern of the same criminal conduct" is another aggravating factor, "which is sufficiently substantial and compelling to distinguish this Theft in the First Degree from others in the same category."

CP (Hughes) at 22-23. The court went on to state that any one of the aggravating factors found would support the exceptional sentence of 90 months. The court also ordered restitution of $145,000. *Id.* at 15.

¶13 Hughes sought direct review by this court, challenging the sufficiency of the evidence upon which he was convicted, the amount of restitution ordered, the exceptional sentence, and that he was denied his right to allocution. This court granted direct review. Hughes subsequently filed a supplemental brief raising new assignments of error under *Blakely,* and his case was consolidated with *Anderson* and *Selvidge.* Because *Hughes* comes to us on direct review, we consider Hughes' other assignments of error in addition to the *Blakely* issues.

## II. ISSUES

A. *Blakely* Issues

¶14 1. Are the exceptional sentence provisions of the SRA facially unconstitutional following *Blakely?*

¶15 2. If the sentence enhancement provisions of the SRA are not facially unconstitutional, are the enhanced sentences imposed on Anderson, Selvidge, and Hughes unconstitutional in light of *Blakely?*

¶16 3. Can a sentence enhancement that is unconstitutional under *Blakely* be deemed harmless error?

¶17 4. If the sentences at issue are unconstitutional, and harmless error analysis does not apply, what is the proper remedy?

## B. Hughes' Remaining Issues

¶18 1. Was there sufficient evidence to support Hughes' conviction?

¶19 2. Should Hughes' conviction be reversed because the trial court denied his right of allocution?

¶20 3. Is the restitution order entered by the trial court manifestly unreasonable or based on untenable grounds?

## III. ANALYSIS

¶21 In *Apprendi v. New Jersey*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed *statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). This court subsequently interpreted that decision to hold that *statutory maximum* was the absolute maximum sentence provided by the legislature for a certain offense, not the maximum sentence allowed by the jury's findings. *State v. Gore*, 143 Wn.2d 288, 313-15, 21 P.3d 262 (2001) (citing *Apprendi*, 530 U.S. at 481; *McMillan v. Pennsylvania*, 477 U.S. 79, 92, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986)).

¶22 The United States Supreme Court corrected our interpretation recently in *Blakely* by holding that the *statutory maximum* referenced in *Apprendi* "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303 (citing *Ring v. Arizona*, 536 U.S. 584, 602, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002)). Contrary to our holding in *Gore*, the Supreme Court made clear that the *statutory maximum* is "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."[2] *Id.* We now examine the impact of the

---

[2] Thus, we overrule *Gore* to the extent that it conflicts with *Blakely*.

*Blakely* holding on our exceptional sentencing provisions and on the specific facts of the cases before us.

■■ ¶23 Constitutional questions and issues of statutory construction are both reviewed de novo. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001); *Weden v. San Juan County*, 135 Wn.2d 678, 693, 958 P.2d 273 (1998)).

A. Are the Exceptional Sentence Provisions of the SRA Facially Unconstitutional in Light of *Blakely*?

¶24 There can be no doubt that *Blakely* undermined the validity of Washington's procedure for issuing exceptional sentences. Whether it actually invalidated portions of the SRA as unconstitutional, however, is a separate question.

■■ ¶25 "A statute is presumed to be constitutional, and the party challenging its constitutionality bears the burden of proving its unconstitutionality beyond a reasonable doubt." *State v. Thorne*, 129 Wn.2d 736, 769-70, 921 P.2d 514 (1996). To fulfill that burden, one must show that "no set of circumstances exists in which the statute, as currently written, can be constitutionally applied." *Moore*, 151 Wn.2d at 669. Where a statute is found facially unconstitutional, the appropriate remedy is declaring that statute inoperative or void. *Id.*

■ ¶26 In contrast, alleging a statute is unconstitutional as-applied requires showing only that application of the statute to the party's specific actions is unconstitutional. *Id.* at 668-69. "Holding a statute unconstitutional as-applied prohibits future application of the statute in a similar context, but the statute is not totally invalidated." *Id.* at 669.

■■ ¶27 In this case, to prove that the exceptional sentencing provisions of the SRA are facially unconstitutional, petitioners must show that there is *no* set of circumstances in which the exceptional sentencing provisions can

be applied constitutionally.[3] In deciding *Blakely*, the United States Supreme Court declared the exceptional sentence procedure at issue in that case—a judge independently finding deliberate cruelty and issuing an exceptional sentence based on that finding—unconstitutional. *Blakely*, 456 U.S. at 300-05. But the Court also recognized ways in which an exceptional sentence could constitutionally be imposed. Specifically, the Court held that a jury need not find the aggravating facts at issue if the defendant stipulated to them or waived his *Apprendi* rights:

> [N]othing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. *See Apprendi*, 530 U.S. at 488[, 120 S. Ct. 2348]; *Duncan v. Louisiana*, 391 U.S. 145, 158[, 88 S. Ct. 1444, 20 L. Ed. 2d 491] (1968). If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. Even a defendant who

---

[3] *Blakely* discussed former RCW 9.94A.120(2) (2000), which previously contained the language allowing a judge to "impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence" and specifying that when the judge imposes an exceptional sentence, he or she "must set forth findings of fact and conclusions of law" supporting it. Former RCW 9.94A.120(3) (2000). Although former RCW 9.94A.120 was recodified as RCW 9.94A.505 in 2001, the language referred to by the Supreme Court now resides in RCW 9.94A.535 (former RCW 9.94A.390) (Laws of 2000, ch. 28, § 8, inserted the first and third paragraphs, containing the provisions at issue, and deleted "in accordance with RCW 9.94A.120(2)," which used to refer to the provisions at issue). We address here the *current* exceptional sentence provision, RCW 9.94A.535, which is the section challenged by petitioners. That section reads in pertinent part:

> The court may impose a sentence outside the standard range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. Whenever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law.

RCW 9.94A.535. That section goes on to list illustrative mitigating and aggravating circumstances warranting an exceptional sentence. *See* RCW 9.94A.535(1)-(2). RCW 9.94A.530(2) also is at issue here because it allowed the court to make the factual findings on aggravating factors based on a preponderance of the evidence, not proof beyond a reasonable doubt. RCW 9.94A.530(2) states in pertinent part that: "[t]he facts shall be deemed proved at the [sentencing] hearing by a preponderance of the evidence."

stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial.

*Blakely*, 542 U.S. at 310. RCW 9.94A.535(2)(f), listing sexual motivation as an aggravating factor, also is still valid because RCW 9.94A.835 requires a jury to find beyond a reasonable doubt that sexual motivation was present. *Blakely* also did not affect the constitutionality of judicial findings supporting exceptional sentences below the standard sentence range. The entire first half of RCW 9.94A.535 regarding mitigating circumstances, therefore, is not affected.

¶28 Because there is at least one way in which RCW 9.94A.535 can be applied constitutionally, it cannot be declared facially unconstitutional. Similarly, RCW 9.94A-.530(2) is facially valid because facts can be proved by stipulation or waiver. We hold that the exceptional sentence provisions of the SRA are still facially constitutional following *Blakely*.

## B. Are the Specific Sentences at Issue Here Unconstitutional?

¶29 In each of these cases, the judge found facts not supported by jury findings, which they used to impose exceptional sentences. Those facts *not* based on prior convictions clearly violated *Blakely*. However, some of the facts arguably were based on prior convictions. *Blakely* left intact the validity of exceptional sentences based on prior convictions.

¶30 Not every aggravating factor cited must be valid to uphold an exceptional sentence: "[w]here the reviewing court overturns one or more aggravating factors but is satisfied that the trial court would have imposed the same sentence based upon a factor or factors that are upheld, it may uphold the exceptional sentence rather than remanding for resentencing." *State v. Jackson*, 150 Wn.2d 251, 276, 76 P.3d 217 (2003). Although some of the aggravating factors used in each sentence at issue violated *Blakely*, we

must still address whether the sentences here could be saved by independently valid aggravating factors based on prior convictions.

¶31 The United States Supreme Court in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), held that a defendant did not have a right to a jury trial on facts of recidivism, specifically, prior convictions. The Court further clarified in *Jones v. United States*, 526 U.S. 227, 249, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999), that facts of prior conviction were distinguishable from other factors increasing a sentence, which would have to be found by a jury because a "prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." The Court in *Apprendi* then held what was "foreshadowed" by *Jones*, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Rather than alter that rule, the Court in *Blakely* merely applied the *Apprendi* holding. *Blakely*, 542 U.S. at 301.

¶32 The exceptional sentences here need not have been found by juries if they are supported by aggravating factors of prior convictions. Under Washington law, however, the court may not consider criminal history per se in issuing exceptional sentences because prior convictions are used to compute presumptive sentences. *State v. Nordby*, 106 Wn.2d 514, 518 n.4, 723 P.2d 1117 (1986). Therefore, prior convictions alone can never be enough to warrant an exceptional sentence under Washington law—aggravating factors require something more than just prior conviction history.

### 1. *Anderson*

¶33 In *Anderson*, the trial judge made factual findings supporting several aggravating factors and stated that *any one* of those factors would warrant the exceptional sentence

he imposed. Under *Jackson*, so long as *one* of those factors is valid, the exceptional sentence can stand. 150 Wn.2d at 276.

¶34 There can be no doubt that the aggravating factors found by the trial judge—(1) a particularly vulnerable victim, (2) an on-going pattern of sexual abuse, (3) use of a position of trust to commit the offenses, (4) an abuse of trust, and (5) an offense that involved a high degree of sophistication, planning, and grooming—violated Anderson's Sixth Amendment right to a jury trial as defined by *Blakely*. The judge made specific findings of fact, which the jury had not found and which increased Anderson's punishment, thereby violating the express terms of *Blakely*. But there is still a question of whether the judge's conclusion that operation of the multiple offense policy would result in a presumptive sentence that was clearly too lenient would fall within the *Apprendi/Blakely* exception to the jury requirement for prior convictions.

¶35 The aggravating factor at issue requires finding that "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010." RCW 9.94A.535(2)(i). The multiple offense policy it refers to states that except for certain circumstances, when "a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score." RCW 9.94A.589(1)(a). It allows courts to consider current convictions as prior convictions for purposes of calculating the offender score. And it is not based solely on the objective determination of the existence of prior convictions; instead, it also requires the conclusion of whether the presumptive sentence calculated is clearly too lenient in light of the other convictions.

¶36 This court has held that a judge may rely on the aggravating factor that the presumptive sentence is too

lenient[4] when "there is some extraordinarily serious harm or culpability resulting from multiple offenses which would not otherwise be accounted for in determining the presumptive sentencing range." *State v. Fisher*, 108 Wn.2d 419, 428, 739 P.2d 683 (1987). We have further defined that inquiry to require a court to find one of two factual bases to support the too lenient conclusion: "(1) 'egregious effects' of defendant's multiple offenses [or] (2) the level of defendant's culpability resulting from the multiple offenses." *State v. Batista*, 116 Wn.2d 777, 787-88, 808 P.2d 1141 (1991).

¶37 *Blakely* left intact the trial judge's authority to determine whether facts alleged and found are sufficiently substantial and compelling to warrant imposing an exceptional sentence under RCW 9.94A.535. That decision is a legal judgment which, unlike factual determinations, can still be made by the trial court. *See State v. Van Buren*, 123 Wn. App. 634, 646, 98 P.3d 1235 (2004) (citing *Blakely*, 542 U.S. at 305 n.8).

¶38 *Blakely* made only one exception to the rule that juries must find facts that increase sentences—*Blakely* held that judges can still find the existence of prior convictions.[5] But this court has outlined specific factual findings a court must show to support a too lenient conclusion—it is not merely a legal conclusion, nor does it entail solely the existence of prior convictions. *Blakely* did not authorize such additional judicial fact finding. The too lenient conclusion is one that must be made by the jury. Anderson's exceptional sentence is vacated.

### 2. *Selvidge*

¶39 In *Selvidge*, the trial court found that (1) Selvidge violated a position of trust; (2) his presumptive sentence was too lenient because Selvidge had more than nine points from prior convictions, which would allow his

---

[4] RCW 9.94A.535(2)(i).

[5] This likely is because of the objective nature and the inherent protections associated with the existence of prior convictions—the defendant already had the facts regarding his prior conviction found by a jury beyond a reasonable doubt.

second current offense/conviction to have no punishment; and (3) he would not benefit from rehabilitation. There can be no doubt that factors one and three required judicial factual findings that violated Selvidge's Sixth Amendment right to a jury trial as defined in *Blakely*. There is still a question, however, as to whether the second factor fits within the *Apprendi/Blakely* exception allowing judges to find facts of prior convictions for exceptional sentencing purposes. Although the same aggravating factor provision at issue in *Anderson*, RCW 9.94A.535(2)(i), is at issue here, *Selvidge* raises a situation not present in *Anderson* where, because of the number of prior convictions, the presumptive sentence would leave one new offense with no punishment. It presents the question of whether a judge can determine that leaving an offense with no punishment is too lenient as a matter of law.

¶40 This court has held that the factual inquiry required to find a presumptive sentence clearly too lenient is "automatically satisfied whenever 'the defendant's high offender score is combined with multiple current offenses so that a standard sentence would result in "free" crimes—crimes for which there is no additional penalty.' " *State v. Smith*, 123 Wn.2d 51, 56, 864 P.2d 1371 (1993) (quoting *State v. Stephens*, 116 Wn.2d 238, 243, 803 P.2d 319 (1991)). Selvidge argues that the too lenient conclusion in free crime cases still requires factual findings under *Batista*. He posits that this court did not consider the constitutional issues now presented by *Blakely* when it decided *Smith*, and that its conclusion that " 'free crimes' automatically equal egregiousness or extraordinary culpability" usurps factual findings that are properly before the jury. Pet'r's Suppl. Br. at 8. Selvidge, therefore, asks this court to overrule *Smith* to the extent that it finds free crimes automatically satisfy the too lenient requirement of RCW 9.94A.535(2)(i).

¶41 Amicus Curiae Washington Association of Prosecuting Attorneys (WAPA) argues that *Batista* does not apply to prior convictions because that case involved *current* offenses. Instead, they posit that the free crime conclusion

requires only two factual findings—Selvidge's prior criminal history and his current offenses—both of which the judge can find under *Blakely*. In support of its position, WAPA cites *Van Buren*, where the Court of Appeals made a similar conclusion:

> "Free crime" analysis is a function of determining the defendant's offender score from the record of his prior and current criminal convictions. It does not require weighing evidence, determining credibility, or making a finding of disputed facts. Thus, it is not affected by the *Blakely* requirement that *factual* issues used to impose an exceptional sentence must be pleaded and proved to a jury beyond a reasonable doubt.

*Van Buren*, 123 Wn. App. at 653 (footnote omitted).

¶42 The court reached that conclusion by discussing this court's reasoning in *Smith*. It quoted our holding on free crimes as:

> "This inquiry [whether there are substantial and compelling reasons justifying an exceptional sentence] is *automatically* satisfied whenever 'the defendant's high offender score is combined with multiple current offenses so that a standard sentence would result in "free" crimes—crimes for which there is no additional penalty.' "

*Id.* at 652-53 (alteration in original) (quoting *Smith*, 123 Wn.2d at 56 (quoting *Stephens*, 116 Wn.2d at 243)). The Court of Appeals noted that *Blakely* did not "relieve the sentencing judge of the duty to make a judgment as to whether properly found aggravating facts were 'substantial and compelling' reasons requiring an exceptional sentence." *Id.* at 651-52 (citing *Blakely*, 542 U.S. at 305 n.8). Because the court reasoned that a judge could make factual findings on current convictions and offender score, and could make the substantial and compelling legal conclusion, it held that the conclusion that a free crime was too lenient was a *Blakely* exception and could be determined by a judge. *See id.*

¶43 That conclusion, though, is premised on an incorrect interpretation of this court's ruling in *Smith*.

Instead of holding that the inquiry into *whether there are substantial and compelling reasons justifying an exceptional sentence* was automatically satisfied by finding a free crime, as *Van Buren* reasons, *Smith* actually held that the inquiry into whether under former RCW 9.94A.390(2)(f) (1993)[6] there is " 'some *extraordinarily serious harm or culpability* resulting from multiple offenses which would not otherwise be accounted for in determining the presumptive sentencing range,' " was automatically satisfied. *Smith*, 123 Wn.2d at 55-56 (emphasis added) (quoting *Fisher*, 108 Wn.2d at 428). The inquiry that the *Van Buren* court referred to, whether there were substantial and compelling reasons for an exceptional sentence, is a legal conclusion that the trial court is still allowed to make following *Blakely*. But the inquiry actually analyzed in *Smith* was the same that was defined by this court in *Batista* to require two *factual findings*. The conclusion that allowing a current offense to go unpunished is clearly too lenient is a factual determination that *cannot* be made by the trial court following *Blakely*. We overrule *Smith* to the extent that it allows the too lenient conclusion to be made by judges and vacate Selvidge's exceptional sentence.

### 3. *Hughes*

¶44 In *Hughes*, the trial court found facts supporting four aggravating factors: (1) the crime was a "major economic offense," (2) the environmental harm was "severe, and not considered by the Legislature in setting the standard range," (3) the defendant committed "rapid recidivism," and (4) the defendant had an "ongoing pattern of the same criminal conduct" CP (Hughes) at 21-23. The State argues that Hughes' rapid recidivism and ongoing pattern of criminal conduct are based on prior convictions and, therefore, can be found by the court without violating Hughes' Sixth Amendment right to a jury trial as defined by *Blakely. See* Resp't's Br. at 10.

---

[6] Currently RCW 9.94A.535(2)(i).

(a) Rapid recidivism

¶45 Rapid recidivism was recognized as a valid aggravating factor in *State v. Butler*, 75 Wn. App. 47, 53-54, 876 P.2d 481 (1994). Amicus Curiae WAPA cites *Butler* as its only support for rapid recidivism as a valid aggravating factor. It argues that the only factual findings related to that aggravating factor are Hughes' prior conviction and his current offense, both of which a trial court is authorized to find under *Blakely*. Amicus Curiae WAPA Br. at 17.

¶46 *Butler* clearly states, however, that if rapid recidivism were solely based on prior convictions, an exceptional sentence could not be based on that factor, as the presumptive sentence ranges already consider prior convictions. *Butler*, 75 Wn. App. at 53-54. In fact, the Court of Appeals explicitly stated that "[t]he trial court's findings here are distinguishable from mere criminal history." *Id*. at 54. In finding that aggravating factor, the court actually considered the "especially short time period between prior incarceration and reoffense." *Id*. The court further stated that an exceptional sentence is justified where the circumstances show "a greater disregard for the law than otherwise would be the case" and found that the defendant's immediate reoffense reflected that disdain. *Id*.

¶47 Those same considerations are evident in *Hughes*. The trial court's findings of fact state that "[l]ess than three (3) months after being released from custody [for a prior similar crime], he committed the exact same offense against the same exact victim. This offense was committed only days after the defendant sat and heard testimony about the severe harm that he had done to the forest." CP (Hughes) at 22. The judge then stated that Hughes "demonstrated a flagrant disregard for the law and shows a complete lack of remorse." *Id*. These findings are extremely similar to the court's conclusion in *Butler* that the short time between release from prison and reoffense demonstrated a disregard and disdain for the law. The conclusions go well beyond merely stating Hughes' prior convictions. Indeed, if that

was all that the aggravating factor was based on, it could not support an exceptional sentence under Washington law.

¶48 The Supreme Court has made an exception to the jury requirement *only* for prior convictions. The findings at issue here involve new factual determinations and conclusions, such as the defendant's disregard for the law, which are not properly made by the trial court following *Blakely*.

(b) Ongoing pattern of the same criminal conduct

¶49 The *Hughes* trial court found an ongoing pattern of the same criminal conduct to be an aggravating factor. We found no cases discussing this aggravating factor per se,[7] and the issue was not briefed beyond a conclusory assertion. Yet, we know that if this factor considered solely prior convictions it would be insufficient to support an exceptional sentence under Washington law. Instead, the factor must consider the combination of the various similar offenses and the heightened harm or culpability that pattern indicates. Like the conclusion that a presumptive sentence for multiple current offenses is too lenient, this determination implicitly must involve factual findings beyond the existence of prior convictions. Per *Blakely*, those factual findings are for a jury.

¶50 Hughes' exceptional sentence is vacated.

C. Can Harmless Error Analysis Apply to *Blakely* Violations?

¶51 Not all federal constitutional errors require reversal, some may have been harmless in their effect on the trial. *Sullivan v. Louisiana*, 508 U.S. 275, 278-79, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). Some constitutional errors, however, "will always invalidate the conviction" and are considered "structural" errors. *Id*. at 279. Such viola-

---

[7] RCW 9.94A.535 does not contain a provision for finding an enhanced sentence based on an ongoing pattern of the same criminal conduct; however, it does contain an aggravating factor provision where the offense is "part of an ongoing pattern of psychological, physical, or sexual abuse of the victim." RCW 9.94A.535(2)(h)(i).

tions that have been deemed *never* to be harmless include a deficient reasonable doubt instruction, deprivation of the right to counsel, a biased trial judge, and violation of the right to self-representation. *Id.* (citing *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984); *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927)).

¶52 This court addressed the question of whether violation of the Sixth Amendment right to have a jury find facts that increase the penalty for a crime beyond the absolute statutory maximum can be deemed harmless error in *State v. Thomas*, 150 Wn.2d 821, 849-50, 83 P.3d 970 (2004). There, we analyzed several errors regarding jury instructions and held that violations of the Sixth Amendment right to have a jury find aggravating circumstances cannot be harmless. *Id.* Following the Supreme Court's decision in *Blakely*, we still hold that harmless error analysis is inappropriate but take this opportunity to clarify our reasoning.

¶53 The Supreme Court's reasoning in *Sullivan* articulates the absurdity of applying harmless error analysis to *Blakely* Sixth Amendment violations. *See Sullivan*, 508 U.S. 275. There, the Supreme Court held that a constitutionally deficient reasonable doubt instruction could never be harmless, equating it to lack of a jury verdict of guilty beyond a reasonable doubt. *See Sullivan*, 508 U.S. at 279-80. The Court reasoned that the traditional harmless error analysis defined by *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), requiring a showing beyond a reasonable doubt that the error at issue did not contribute to the verdict received, could not be applied where there was no verdict of guilty beyond a reasonable doubt:

> Consistent with the jury-trial guarantee, the question [*Chapman*] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it

had upon the guilty verdict in the case at hand .... The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, *because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.*

Once the proper role of an appellate court engaged in the *Chapman* inquiry is understood, the illogic of harmless-error review in the present case becomes evident. Since, for the reasons described above, there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of *Chapman* review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.

*Sullivan,* 508 U.S. at 279-80 (some emphasis added) (citations omitted).

¶54 The Court reasoned that because there was not a proper reasonable doubt instruction, there had not been a jury verdict of guilty beyond a reasonable doubt. Thus, there was nothing upon which to apply the harmless error analysis to conclude that, but for the error, the result would have been the same. To the contrary, the court would only have been speculating on how the jury *would have found* if they had been correctly instructed.

¶55 This is directly analogous to the situation presented by judges, rather than juries, finding facts necessary to

increase sentences. In each case at hand, there was no jury finding beyond a reasonable doubt of aggravating factors warranting an enhanced sentence. It would be illogical to perform harmless error analysis on the absence of those findings. There is no object upon which to apply harmless error analysis. Instead of asking whether but for the error the findings *would have been the same*, the court would be asking whether but for the error the findings *would have been different*. Such an analysis is the equivalent of speculating on the jury's verdict, which the Supreme Court has held is never allowed.[8]

¶56 Supporters of harmless error analysis argue that the Supreme Court and other federal courts have already held that harmless error analysis applies to *Apprendi/Blakely* Sixth Amendment violations. Those proponents, however, incorrectly characterize *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002). Instead of holding that harmless error analysis applied to *Apprendi* violations, the Supreme Court in *Cotton* actually applied the plain error doctrine.[9] It held that plain error analysis could be applied to *Apprendi* violations and concluded that

[8] The Washington Court of Appeals applied the Court's reasoning in *Sullivan* in a similar way in *State v. Jackson*, 87 Wn. App. 801, 944 P.2d 403 (1997), *aff'd*, 137 Wn.2d 712, 976 P.2d 1229 (1999). The court there analyzed whether a jury instruction without the proper standard for finding guilt as an accomplice could be deemed harmless. *Id*. at 814-16. The court reasoned that in applying harmless error analysis, the reviewing court asks whether the guilty verdict was "unattributable to the error; it does not decide whether a guilty verdict would have been rendered by a hypothetical jury faced with the same record, except for the error." *Id*. at 813 (citing *State v. Smith*, 131 Wn.2d 258, 266, 930 P.2d 917 (1997)). It went on to discuss *Sullivan* and concluded that "[h]armless error analysis is incompatible with the absence of an actual verdict beyond a reasonable doubt." *Id*. at 814 (citing *Carella v. California*, 491 U.S. 263, 269, 109 S. Ct. 2419, 105 L. Ed. 2d 218 (1989) (Scalia, J., concurring)). Thus, "[l]acking a formal verdict, the appellate court would be infringing the right to a jury trial by holding that no reasonable jury would have found otherwise." *Id*. (citing *California v. Roy*, 519 U.S. 2, 7, 117 S. Ct. 337, 339, 136 L. Ed. 2d 266 (1996) (Scalia, J., concurring)).

[9] Plain error analysis considers the situation where a party raises an issue for the first time on appeal and requires that party to show "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Cotton*, 535 U.S. at 631 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). Following that showing, the party must also prove " '(4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Id*. (quoting *Johnson*, 520 U.S. at 467).

the error at issue did not affect the "fairness, integrity, or public reputation" of the proceedings. *Id.* at 631-32.

¶57 The Ninth Circuit subsequently addressed whether harmless error could be applied to *Apprendi* violations and held that the Supreme Court's analysis in *Cotton* regarding plain error did not control its decision: "*United States v. Cotton* . . . does not control nor aid our analysis. The lack of drug quantity in the indictment and jury decision in that case was analyzed under plain error, not harmless error." *United States v. Jordan,* 291 F.3d 1091, 1096 n.7 (9th Cir. 2002).

¶58 The Ninth Circuit went on to find that harmless error is *not* appropriate where the exceptional sentence is *greater* than that allowed for the offense charged and found by the jury. *Id.* at 1096-97. Like the Supreme Court in *Sullivan,* the Ninth Circuit found that harmless error analysis in such a situation would require too much speculation "[w]hen quantity [the basis for the exceptional sentence] is neither alleged in the indictment nor proved to a jury beyond a reasonable doubt, there are too many unknowns to be able to say with any confidence, let alone beyond reasonable doubt, that the error was harmless." *Id.* at 1096. Additionally, the court was troubled that consideration of the defense's likely response to the aggravating evidence was also speculative. *See id.* at 1096-97. The court concluded that *whenever* a fact that increases the maximum sentence is not decided by the jury, "the error must be corrected." *Id.* at 1097.

¶59 Harmless error proponents also assert that other persuasive authorities have applied such analysis to *Apprendi/Blakely* violations.[10] Indeed, *some* federal jurisdictions have applied harmless error analysis. *See, e.g.,*

---

[10] Respondent Lewis County Prosecutor cites two Ninth Circuit cases as applying harmless error analysis to *Apprendi* violations. *See* Resp't's Br. at 12 n.41. Respondent misrepresents those cases; they actually apply plain error analysis, which is distinct. They do not address the applicability of harmless error. *See, e.g., United States v. Valensia,* 299 F.3d 1068, 1076-77 (9th Cir. 2002). Respondent also discusses several Washington cases with similar facts to support application of harmless error analysis here. Resp't's Br. at 12-13. Those cases,

*Campbell v. United States*, 364 F.3d 727, 737 (6th Cir. 2004) (reasoning that *Apprendi* errors are "trial-type" errors subject to harmless error analysis and holding that the reviewing court must determine beyond a reasonable doubt whether the jury would have found the fact at issue in sentencing). The Fifth Circuit also applied harmless error analysis and provided more reasoning for doing so. *See United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002). There, the Fifth Circuit reasoned that an *Apprendi* violation really contains a defective indictment and a defective jury instruction, neither of which are in the limited class of structural constitutional errors that can never be deemed harmless. *Id.* at 665. It also noted that the Supreme Court applied harmless error analysis to the omission of offense elements from a jury instruction. But it did not discuss the implicit difference between asking whether but for the error, the jury would have rendered the *same* or *different* verdict.

¶60 The authority asserted by harmless error proponents is unpersuasive. The federal jurisdictions appear inconsistent in whether they will apply harmless error analysis to *Apprendi/Blakely* violations. Moreover, the Supreme Court has not yet ruled to clarify this issue.[11]

¶61 The proponents of harmless error analysis also seek to analogize *Blakely* Sixth Amendment violations to omission of offense elements from jury instructions, which the Supreme Court has held is subject to harmless error analysis.[12] *See Neder v. United States*, 527 U.S. 1, 9, 119 S. Ct.

however, were decided *before Blakely* and the evolution of the constitutional right at issue here.

[11] In *Booker*, the Supreme Court's most recent opinion regarding the constitutionality of sentencing schemes with judicial fact-finding, the Court did not rule on the applicability of harmless error analysis. However, if anything, the majority opinion written by Justice Breyer implied that harmless error analysis would not be applicable to such Sixth Amendment violations: "[I]n cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine." *Booker*, 543 U.S. at 268.

[12] This court adopted the United States Supreme Court holding in *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), in *State v.*

1827, 144 L. Ed. 2d 35 (1999). The Court there held that conclusion was consistent with *Sullivan*, distinguishing the situation where *all* of the jury's findings were "vitiated" by the improper reasonable doubt instruction from that where the jury simply did not explicitly find on *one* element. *Id.* at 10-15.

¶62 The situation arising in *Blakely* Sixth Amendment violations is readily distinguishable from the scenario in *Neder*. Although *Neder* involved the situation where a jury did not find facts supporting every element of the crime, it still returned a guilty verdict. Like traditional harmless error analysis cases, the reviewing court could ask whether but for the omission in the jury instruction, the jury would have returned the *same* verdict. Where *Blakely* violations are at issue, however, the jury necessarily did *not* return a special verdict or explicit findings on the aggravating factors supporting the exceptional sentence. The reviewing court asks whether but for the error, the jury would have made *different* or *new* findings. This situation is analogous to *Sullivan*—there is no basis upon which to conduct a harmless error analysis. Instead, proponents of harmless error ask this court to speculate on what juries would have done if they had been asked to find different facts. This speculation is not permitted. Harmless error analysis cannot be conducted on *Blakely* Sixth Amendment violations.

D. What is the Proper Remedy?

¶63 As RCW 9.94A.535 currently exists, it allows the court to impose a sentence beyond the standard range when it finds "substantial and compelling reasons justifying" an exceptional sentence. And the statute requires that "[w]henever a sentence outside the standard sentence

---

*Brown*, 147 Wn.2d 330, 340, 58 P.3d 889 (2002). We further explained in *Thomas* that not every omission or misstatement of an element in a jury instruction relieves the State of its burden: "'the error is harmless if that element is supported by uncontroverted evidence.'" *Thomas*, 150 Wn.2d at 844-45 (quoting *Brown*, 147 Wn.2d at 341). And in that very same opinion, we held that harmless error analysis *could not* apply to *Apprendi* violations. *Id.* at 847, 849. That case presented *both* types of errors and we chose *not* to apply the *Neder* reasoning to *Apprendi* errors.

range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535. It explicitly directs the trial court to make the necessary factual findings and does not include any provision allowing a jury to make those determinations during trial, during a separate sentencing phase, or on remand. Furthermore, advocates on each side either explicitly or impliedly concede that no procedure is currently in place allowing juries to be convened for the purpose of deciding aggravating factors either after conviction or on remand after an appeal. To allow exceptional sentences here, we would need to imply a procedure by which to empanel juries on remand to find the necessary facts, which would be contrary to the explicit language of the statute.

¶64 "This court has consistently held that the fixing of legal punishments for criminal offenses is a legislative function." *State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719, 718 P.2d 796 (1986). " '[I]t is the function of the legislature and not of the judiciary to alter the sentencing process.' " *Id.* (quoting *State v. Monday*, 85 Wn.2d 906, 909-10, 540 P.2d 416 (1975) (emphasis added)).

¶65 Selvidge argues that the court is simply without authority to establish a constitutional procedure for issuing exceptional sentences. Amicus Curiae Washington Association of Criminal Defense Lawyers (WACDL) makes a similar argument:

> [E]mpanelling a jury, either after conviction or on remand after reversal of an exceptional sentence on appeal, to determine whether the facts supporting an exceptional sentence have been proven beyond a reasonable doubt is a procedure which has not been authorized by statute and any action to follow this procedure would be void.

Br. of Amicus Curiae WACDL at 31.

¶66 We are presented only with the question of the appropriate remedy on *remand*—we do not decide here whether juries may be given special verdict forms or interrogatories to determine aggravating factors at trial. But on

this limited issue, we agree with petitioners and WACDL. Where the legislature has not created a procedure for juries to find aggravating factors and has, instead, explicitly provided for judges to do so, we refuse to imply such a procedure on remand.

¶67 *State v. Martin*, 94 Wn.2d 1, 614 P.2d 164 (1980), supports this conclusion. There, in a case involving the former Washington death penalty, we addressed the situation where a defendant pleaded guilty to first degree murder. There was no statutory provision allowing a jury to be empanelled to address the death penalty following a guilty plea. The relevant statute required the *same trial jury* to be *reconvened* to determine the issue of death following the trial. *Id.* at 8. The State asked us to *imply* a "special sentencing provision" that would allow the death penalty to apply to those who pleaded guilty. *Id.* at 7. But we concluded that the legislature had not anticipated a defendant pleading guilty and had failed to provide for that situation. *Id.* at 8. Faced with the legislature's omission, we concluded that we did "not have the power to read into the statute that which we may believe the legislature has omitted, be it an intentional or inadvertent omission . . . it would be a clear judicial usurpation of legislative power for us to correct that legislative oversight." *Id.* This court held that because the statute did not allow us to convene a jury solely to consider death, we could not apply the death penalty where defendants pleaded guilty.[13] *Id.* at 9.

¶68 Justice Horowitz concurred in *Martin* and agreed there was no provision for empanelling a jury solely for death penalty sentencing. *Id.* at 18 (Horowitz, J., concurring). In determining that it would be improper for the court to imply such a procedure, he quoted the United States Supreme Court:

"It is one thing to fill a minor gap in a statute—to extrapolate from its general design details that were inadvertently omit-

---

[13] This court again refused to imply such a procedure in *State v. Frampton*, 95 Wn.2d 469, 476-79, 627 P.2d 922 (1981) (citing *Martin*, 94 Wn.2d at 19) (concluding that the request for a new procedure should be directed to the legislature).

ted. It is quite another thing to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality."

*Martin*, 94 Wn.2d at 18 (Horowitz, J., concurring) (quoting *United States v. Jackson*, 390 U.S. 570, 579-80, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968)). Moreover, Justice Horowitz was able to show that the legislature had expressly rejected a provision for empanelling a jury where a defendant pleaded guilty.

¶69 Similar to the situation in *Martin*, the exceptional sentence provisions of the SRA do not provide a mechanism by which a jury could be empanelled on remand to find aggravating factors warranting an enhanced sentence. To the contrary, the statute provides that the *court* should find facts necessary to support such a sentence. This situation is distinct from those where a statute merely is silent or ambiguous on an issue and the court takes the opportunity to imply a necessary procedure.[14] Furthermore, many of the aggravating factors listed in RCW 9.94A.535(2) are so technical and legalistic that it is difficult to conceive that the legislature would intend or desire for lay juries to apply them.[15]

¶70 This court will not create a procedure to empanel juries on remand to find aggravating factors because the legislature did not provide such a procedure and, instead, explicitly assigned such findings to the trial court. To create

---

[14] The Ninth Circuit in *United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002), addressed the constitutionality of the federal drug statute under which drug quantity historically had been interpreted as a sentencing factor to be found by the court. In making every effort not to invalidate the statute as violating *Apprendi*, the court looked first to whether the statute was explicit in who should make the factual determination and found it did not so specify: "[the statute] is most striking for what it does not say. The statute does not specify who shall determine drug quantity or identify the appropriate burden of proof for these determinations." *Id.* at 565. It compared that silence to *Apprendi*, where the statute *directed the trial court* to find the basis for a hate crime by a preponderance of the evidence. *Id.* The court was able to *imply* a procedure by which the jury could find the necessary facts.

[15] *See, e.g.*, RCW 9.94A.535(2)(d)(ii) ("The current offense involved attempted or actual monetary loss substantially greater than typical for the offense.").

such a procedure out of whole cloth would be to usurp the power of the legislature.[16]

E. Hughes' Other Issues

1. *Was There Sufficient Evidence to Support Hughes' Conviction?*

¶71 Hughes challenges the sufficiency of the evidence upon which he was convicted. He asks this court to look closely at the evidence and challenges the conclusions drawn by the trial court. Additionally, he challenges the testimony of two witnesses and the court's reliance thereon.

¶72 But in reviewing the sufficiency of the evidence, the reviewing court does not "determine whether *it* believes the evidence at trial established guilt beyond a reasonable doubt . . . 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Determinations of credibility are for the fact finder and are not reviewable on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶73 Hughes has not met his burden of showing that no rational trier of fact could have found facts supporting his conviction beyond a reasonable doubt. We affirm his conviction.

2. *Was Hughes Denied His Right of Allocution?*

¶74 Hughes also asks this court to vacate his sentence and remand for resentencing because he was

---

[16] We recognize that Division One of the Court of Appeals came to the opposite conclusion in *State v. Harris*, 123 Wn. App. 906, 922-26, 99 P.3d 902 (2004). However, we disagree with that conclusion as well as the court's reasoning supporting it—that because there is nothing in the statute to prohibit the procedure and because trial courts have some inherent authority to imply procedures where they are absent, that we could do so here in the face of legislative intent to the contrary. We reach the opposite conclusion.

denied his right of allocution. The record reflects that the trial court failed to ask Hughes if he wished to speak. Failure by the trial court to solicit a defendant's statement in allocution constitutes legal error. *See In re Pers. Restraint of Echeverria*, 141 Wn.2d 323, 336, 6 P.3d 573 (2000). However, Hughes failed to object at trial and raises this issue for the first time on appeal.[17] Further, he has not shown that he was prejudiced by the error. According to RAP 2.5(a)(3), if the trial court's failure to request a defendant's statement is not a "manifest error affecting a constitutional right" we need not consider it for the first time on appeal here.

¶75 Hughes appears to assert that the right to allocution is a constitutional right that cannot be denied. This court has held to the contrary: "a defendant's right of allocution is derived from state statutes. Its legal provenance under state law is not constitutional in nature." *Echeverria*, 141 Wn.2d at 335 (explaining that *State v. Happy*, 94 Wn.2d 791, 620 P.2d 97 (1980) was decided on a statutory, not constitutional, basis). Because the right at issue is statutorily based and is not a constitutional right, and because Hughes failed to raise this objection at trial, this court does not have to address his allocution claim on review. *See* RAP 2.5(a). We do not vacate his sentence for violation of the right to allocution.

3. *Is the Restitution Order Entered by the Trial Court Manifestly Unreasonable or Based on Untenable Grounds?*

 ¶76 Hughes challenges the restitution imposed ($145,000) based on ecological and monetary values being arbitrary and an abuse of discretion because the market value of the trees stolen was assessed as $4,465 at trial. The trial court has great power and discretion in issuing restitution. *State v. Enstone*, 137 Wn.2d 675, 679, 974 P.2d 828

---

[17] The court heard arguments from both the prosecution and the defense counsel at length. Suppl. RP at 24-34. The judge asked if they were "all done." *Id.* at 34. He then began to discuss restitution and sentencing. *Id.* Hughes did not object to being "denied" his right to allocution. *See id.*

(1999); *State v. Fleming*, 75 Wn. App. 270, 274, 877 P.2d 243 (1994). A restitution order will be reversed only if Hughes shows an abuse of discretion by the trial court, which exists when the trial court's determination is manifestly unreasonable or based on untenable grounds. *Enstone*, 137 Wn.2d at 679 (evaluating appeal of restitution order pursuant to RCW 9.94A.142 and citing *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991); *State v. Cunningham*, 96 Wn.2d 31, 34, 633 P.2d 886 (1981)).

¶77 RCW 9.94A.753(1)[18] directs the trial court to impose restitution at a *sentencing* hearing. The amount of restitution should be based on "easily ascertainable damages." RCW 9.94A.753(3). However, the amount of harm or loss "need not be established with specific accuracy." *Fleming*, 75 Wn. App. at 274. Evidence supporting restitution " ' "is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture." ' " *Id*. at 274-75 (quoting *State v. Pollard*, 66 Wn. App. 779, 785, 834 P.2d 51 (1992) (quoting *State v. Mark*, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984))). To determine the amount of restitution, the trial court can either rely on a defendant's acknowledgment or it can determine the amount by a preponderance of the evidence. *State v. Hunsicker*, 129 Wn.2d 554, 558-59, 919 P.2d 79 (1996); *State v. Ryan*, 78 Wn. App. 758, 761, 899 P.2d 825 (1995). Where a defendant disputes facts relevant to the determination of restitution, the State must prove the amount by a preponderance of the evidence at an "evidentiary hearing." *State v. Dedonado*, 99 Wn. App. 251, 256, 991 P.2d 1216 (2000). Case law does not define "evidentiary hearing" in the restitution context. However, *Black's Law Dictionary* defines the term as "[a] hearing at which evidence is presented, as opposed to a hearing at which only legal argument is presented." BLACK'S LAW DICTIONARY 738 (8th ed. 2004).

---

[18] Former RCW 9.94A.142, *recodified as* § 9.94A.753 (LAWS OF 2001, ch. 10, § 6).

¶78 There is no independent requirement that the amount set in restitution be equal to a calculation determined at trial. And Hughes points to no concrete basis upon which to find that the method of calculating the damages violated the trial court's discretion. Hughes contends that the amount of restitution should be based on the market value, citing RCW 9A.56.010(18)(a), which defines value as the market value. In RCW 9A.56.010, the term value and its definition is relevant to defining the various degrees of theft which are based, in part, on the values of the objects stolen. *See* RCW 9A.56.010, .030-.050. Because the definition of value he asserts resides in the theft and burglary statute, not in the SRA which governs sentencing, it does not pertain to restitution.

¶79 The SRA governs restitution and the calculation thereof as part of sentencing. *See, e.g., State v. Edelman*, 97 Wn. App. 161, 166, 984 P.2d 421 (1999) ("[U]nder the sentencing reform act, restitution is part of an offender's sentence."). RCW 9.94A.030(34) defines restitution for purposes of the SRA to be "a specific sum of money ordered by the sentencing court to be paid by the offender to the court over a specified period of time as payment of damages. The sum may include both public and private costs." It does not require the value to be based on market value. And it considers both private and *public* costs, which supports considering the real value of the trees and the harm to the environment.

¶80 The trial court here conducted a sentencing hearing at which evidence was presented. The State put on two witnesses, both of whom defense counsel chose not to cross-examine. RP (May 23, 2003) at 3-21. Defense counsel had the opportunity to put on evidence and chose to admit only two exhibits. *Id.* at 22. The trial court relied on testimony from a forest expert on the real value of the trees stolen (including both ecological and monetary components), not the market value. But that value constituted an ascertainable amount, which the State proved beyond mere speculation or conjecture. Hughes has not satisfied his

burden of showing that the court's restitution order was manifestly unreasonable or based on untenable grounds. We affirm the restitution order.

## IV. CONCLUSION

¶81 For the reasons discussed above, we hold that the exceptional sentence provisions of the SRA are facially constitutional but that the exceptional sentences imposed upon Anderson, Selvidge, and Hughes were unconstitutional. Because we hold that harmless error analysis is inapplicable to these violations, we remand for sentencing within the standard range. Additionally, we affirm Hughes' conviction and the restitution imposed by the trial court.

ALEXANDER, C.J.; C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, and OWENS, JJ.; and IRELAND, J. Pro Tem., concur.

¶82 SANDERS, J. (concurring) — Had the defense in Daniel Hughes' case challenged the credentials of the State's expert witness at the restitution hearing, cross-examined, or introduced its own evidence on restitution, I think this case might well present a restitution issue worthy of consideration. However, on this record I must concur with the majority's disposition.

Reconsideration denied July 26, 2005.