[No. 59743-0.    En Banc.    December 30, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. PHILLIP ARTHUR SMITH, *Petitioner*.

*Andrew P. Zinner* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Michael J. Lang, Deputy,* for respondent.

DURHAM, J. — Petitioner Phillip Arthur Smith raises several challenges to the exceptional sentences he received for three burglary convictions. We affirm imposition of the exceptional sentences, but remand for reconsideration of sentence duration.

After a jury trial, Smith was convicted on three counts of second degree burglary for stealing items from three apart-

ments in the early morning hours of April 7, 1990. During all three thefts, people were present in the respective apartments. Smith was apprehended after a noise woke up one of the victims and she discovered petitioner crouched in front of her television set. He ran out of the apartment and the victim called the police. Smith was arrested leaving the area of the apartments with a carload of stolen televisions, stereo speakers, and videotape recorders — items which were identified as having come from the burglarized apartment units.

These convictions were not unique. As the trial judge found, Smith has a lengthy criminal record:

| | |
|---|---|
| March 6, 1982 | [C]ommission of a residential burglary concluding in a rape; defendant convicted of rape 1 (82-1-03890-0); |
| March 9, 1982 | [C]ommission of residential burglary, burglary conviction (82-1-00805-9); |
| March 13, 1982 | [A]ttempted commission of a residential burglary of which defendant was convicted (82-1-00805-9)[;] |
| October 16, 1982 | Defendant released from jail on the above causes (82-1-00805-9)[;] |
| October 18, 1982 | Commission of another residential burglary, convicted (82-1-3223-5)[;] |
| March 30, 1983 | Defendant sentenced on above cause and a series of rapes and his deferred sentence for burglary convictions was revoked (rape convictions overturned on appeal and defendant subsequently plead guilty to one count of rape 1)[;] |
| February 13, 1987 | While in custody defendant sentenced to 72 months for rape 1 (82-1-03890-0)[;] |
| January 14, 1988 | Defendant paroled from prison[;] |
| November 7, 1988 | Defendant attacks a woman he met at a bar and takes her money, convicted of robbery 2 (88-1-05590-1)[;] |
| March 17, 1989 | Defendant sentenced to 13 months for above robbery[;] |
| September 13, 1989 | Defendant released[;] |
| April 7, 1990 | Three residential burglaries which are the basis for the current convictions were committed. |

Clerk's Papers (CP), at 51-52.

Smith's prior convictions, when combined with his current offenses, resulted in an offender score of "10" for each burglary. The standard range for second degree burglary with an offender score of "9 or more" is 43 to 57 months, served concurrently. The prosecutor, citing several aggravating factors, urged the judge to impose an exceptional sentence of 120 months for each burglary count, served consecutively. The trial judge agreed with the prosecutor on the presence of aggravating factors, and made the following findings of fact:

> 1. The defendant committed crimes against multiple victims and the multiple offender policy results in a too[-]lenient presumptive sentence.
>
> 2. The defendant has consistently demonstrated that he [is] a danger to the community in that:
>
>> a. he has consistently re-offended very shortly after being released from prison;
>>
>> b. he has consistently burglarized occupied residences;
>
> 3. The defendant has the following criminal history: [summarized above][;]
>
> 4. The defendant[']s offender score exceeds the maximum matrix score of nine.

CP, at 51-52. The trial judge concluded that the aggravating factors justified an exceptional sentence of 100 months on each burglary count, served consecutively. CP, at 52-53.

Smith appealed the exceptional sentences, as well as several other issues which are not relevant to our review. The Court of Appeals affirmed, but remanded for reconsideration of the sentence duration. In doing so, it held that the trial court's reliance on the "multiple victims" factor was incorrect as a matter of law, and that a recent decision by this court precluded consideration of future dangerousness.[1] Nonetheless, imposition of an exceptional sentence was justified because Smith's offender score exceeded the maximum matrix score of 9, thereby resulting in a presumptive sentence that was "clearly too lenient". "Although a high offender score alone cannot justify an exceptional sentence, current multiple offenses may justify a sentence exceeding

---

[1]As the State did not seek review on either of these holdings, we will not consider them.

the standard range when those in excess of the number necessary to reach the maximum range would otherwise go unpunished." *State v. Smith*, 67 Wn. App. 81, 91, 834 P.2d 26 (1992). The appellate court further held that an exceptional sentence was justified because the burglaries occurred in occupied residences. Imposing an exceptional sentence under such circumstances "is consistent with public policy". *Smith*, at 92.

█ A court may impose an exceptional sentence when "it finds, considering the purpose of [the Sentencing Reform Act of 1981], that there are substantial and compelling reasons justifying an exceptional sentence". RCW 9.94A.120(2).[2] In reviewing an exceptional sentence, an appellate court undertakes a 2-part inquiry:

> First, it must decide if the record supports the sentencing judge's reasons for imposing the exceptional sentence. Because this is a factual question, the sentencing judge's reasons must be upheld if they are not clearly erroneous. *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986). Under the second part of RCW 9.94A.210(4)(a), the appellate court must determine independently, as a matter of law, if the sentencing judge's reasons justify the imposition of a sentence outside the presumptive range. *Nordby*, at 518. The reasons must be "substantial and compelling". RCW 9.94A.120(2). They must "take into account factors other than those which are necessarily considered in computing the presumptive range for the offense." *Nordby*, at 518.

*State v. Fisher*, 108 Wn.2d 419, 423, 739 P.2d 683 (1987).

█ Smith first argues that the trial court erred by relying on the "clearly too lenient" aggravating factor in imposing an exceptional sentence. Under RCW 9.94A.390(2)(f), the court may consider as an aggravating factor whether "[t]he operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter". In *Fisher*, we explained that "[i]t is proper to rely on this aggravating factor when there is some extraordinarily serious harm or culpability resulting from multiple offenses which would not

---

[2]Unless otherwise noted, all references are to the version of the SRA which was in effect at the time Smith committed his crimes in April 1990.

otherwise be accounted for in determining the presumptive sentencing range." 108 Wn.2d at 428. This inquiry is automatically satisfied whenever "the defendant's high offender score is combined with multiple current offenses so that a standard sentence would result in 'free' crimes — crimes for which there is no additional penalty". *State v. Stephens*, 116 Wn.2d 238, 243, 803 P.2d 319 (1991).

Here, the defendant had multiple current offenses which resulted in an offender score of 10 — 1 point over the sentencing grid's "9 or more" category.[3] Given that each second degree burglary conviction counts for two points, in effect, Smith is receiving one-half of a "free" crime; petitioner admits as much in his brief. Petition for Review, at 9. Accordingly, the trial court properly considered "clearly too lenient" as an aggravating factor in imposing Smith's exceptional sentence.[4]

Next, Smith argues that the trial court incorrectly considered the fact that the residences he burglarized were occupied when imposing an exceptional sentence. Although Smith does not dispute the trial court's finding that "he has consistently burglarized occupied residences", petitioner argues that consideration of this factor is an ex post facto application of the recently passed residential burglary statute, RCW 9A.52.025.

■■ We disagree. Although the appellate court cited the residential burglary statute in upholding the trial court decision, it did so merely to illustrate a long-standing public policy favoring the protection of residential dwellings. There is no indication that the trial court relied upon an ex post facto application of RCW 9A.52.025 in arriving at Smith's exceptional sentence. Indeed, the trial court did not impose

---

[3]The trial court's discussion of the defendant's offender score is sufficient as a finding of fact to support the "clearly too lenient" aggravating factor. *Stephens*, at 243.

[4]Smith argues that one-half of a free crime is insufficient to support an exceptional sentence. This argument is patently meritless. Both public policy and the stated purposes of the SRA demand full punishment for each current offense. *See Stephens*, at 245.

the sentence for burglarizing *dwellings*; rather, it imposed the sentence because people were present in the dwelling.

Consideration of the victim's presence is an appropriate aggravating factor when meting out an exceptional sentence for burglary.[5] A 2-part test determines the legal adequacy of an aggravating factor:

> First, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range. Second, the asserted aggravating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category.

*State v. Grewe*, 117 Wn.2d 211, 215-16, 813 P.2d 1238 (1991). The first factor is satisfied because the victim's presence is not a necessary component of burglary.[6] The second element is supported because the presence of victims makes it more likely that a serious injury might result from the commission of a burglary. We agree with the appellate court that burglary of occupied residences presents a higher seriousness level. *Smith*, 67 Wn. App. at 92. Thus, consideration of the victim's presence during a burglary is an appropriate aggravating factor for an exceptional sentence.[7]

Smith further argues that the trial court acted improperly by imposing an exceptional sentence which was both beyond the standard range, and consecutive. Petitioner cites language from *State v. Batista*, 116 Wn.2d 777, 808 P.2d 1141 (1991): "If a presumptive sentence is clearly too lenient, this problem could be remedied *either* by lengthening concurrent sentences, *or* by imposing consecutive sentences." *Batista*, at 785-86.

---

[5]In his supplemental brief, petitioner raises the "real facts" doctrine to bar consideration of the residential natures of the burglaries during sentencing. We will not consider issues that are raised for the first time in a supplemental brief. *Douglas v. Freeman*, 117 Wn.2d 242, 257-58, 814 P.2d 1160 (1991).

[6]Until the 1975 amendments to the criminal code, first and second degree burglary were differentiated by the presence of victims during the criminal act. *Compare Laws* 1909, ch. 249, §§ 326, 327 *with* Laws of 1975, 1st Ex. Sess., ch. 260, §§ 9A.52.020, .030.

[7]In reaching this conclusion, we offer no opinion on the additional "zone of privacy" rationale argued by the State.

■ However, petitioners fail to read this passage in context. Other sections of that opinion make it clear that "[w]here multiple current offenses are concerned, *in addition to lengthening of sentences*, an exceptional sentence may also consist of imposition of consecutive sentences where concurrent sentencing is otherwise the standard." (Italics ours.) *Batista*, at 784. Indeed, in *State v. Oxborrow*, 106 Wn.2d 525, 723 P.2d 1123 (1986), we upheld an exceptional sentence which was both beyond the standard range and consecutive. The SRA itself supports no other result. Thus, we hold that is permissible to impose an exceptional sentence which includes both sentencing components.

■ Finally, Smith argues that the trial court abused its discretion by imposing an exceptional sentence which was clearly excessive. Due to our disposition of this case, we find it unnecessary to reach this issue. Of the four aggravating factors relied upon by the trial court in imposing an exceptional sentence, only two remain — clearly too lenient, and burglary of an occupied residence. Given the great disparity between the presumptive sentence and the exceptional sentence, it is unclear whether the trial judge would have imposed the same sentence had he considered only the two valid aggravating factors.[8] In such an instance, a remand is appropriate. *State v. Dunaway*, 109 Wn.2d 207, 219-20, 743 P.2d 1237, 749 P.2d 160 (1987).

Therefore, we affirm imposition of Smith's exceptional sentence, but remand for reconsideration of the sentence duration.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, SMITH, and GUY, JJ., concur.

---

[8]In his written findings, the trial judge stated that "[e]ach of the above findings of fact is a substantial and compelling reason justifying an exceptional sentence of 100 months on each count to run consecutively." CP, at 53. Although this statement sheds light on the trial court's reasoning, remand is still appropriate. For example, it is doubtful that the trial judge would have exceeded the standard range by almost six times solely because the defendant would receive one-half of a "free" crime under the presumptive range.

MADSEN, J. (dissenting) — Although I agree with the majority on many of the issues presented by this appeal, there are two points upon which I disagree.

The record from the sentencing proceeding supports the majority's holding that the trial court did not improperly rely on RCW 9A.52.025, the residential burglary statute, when imposing its exceptional sentence. I disagree, however, with the majority's conclusion that the victim's presence during a burglary presents a sufficiently substantial and compelling reason to depart from the standard range. The majority states that the victim's presence during the crime was a legally adequate aggravating factor for two reasons: because the victim's presence during a burglary is not a necessary component of burglary; and because the victim's presence makes it more likely that a serious injury "might" result from the commission of a burglary. Majority, at 56-57.

The test for the legal adequacy of an aggravating factor is set out in *State v. Grewe*, 117 Wn.2d 211, 813 P.2d 1238 (1991). The first part of the *Grewe* test is whether the Legislature considered the aggravating factor at issue when establishing standard range sentencing for the particular crime. In 1975, the Legislature amended the criminal code to abolish the distinction between degrees of burglary based on the presence or absence of victims, as noted by the majority. *Grewe*, at 215-16. It appears, therefore, that when the Legislature adopted the 1975 amendment discarding the presence of victims as a distinction between first and second degree burglary it considered and rejected the presence of a victim as an aggravating factor in the crime of burglary.

More importantly, under the second part of the *Grewe* test, the aggravating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category. Two aspects of the majority's holding on this point are troubling. The first is quite simply that the majority punishes the defendant for what *could* have, but did not, happen. It is true that serious injury *may*

occur in any set of circumstances where a crime is committed in the proximity of other people. This is certainly not limited to the context of a burglary nor does the mere possibility that a serious injury *might* occur serve to set this defendant's crime apart from others. If the evidence here showed that an injury had occurred, or even that an actual threat of injury was present, then additional punishment may have been warranted.[9] There is nothing in this record, however, to indicate that the victims were even aware that the defendant was present in the residence, let alone that any threat or violence occurred. The defendant here is receiving nearly six times the standard range because something serious *could* have happened.

Equally troubling is that the majority, by holding that the presence of a victim during a burglary is, by itself, an aggravating circumstance, essentially usurps the Legislature's role. It is the job of the Legislature to distinguish between crimes and vary penalties where the distinctions can easily be incorporated into the statute.[10] On the other hand, it is the court's role to make case-specific decisions regarding the seriousness of an individual offense where the inquiry is too detailed or qualitative to be captured in a statute. In promulgating the *Grewe* test, this court acknowledged that the Legislature cannot anticipate every nuance of criminal conduct. Kevin R. Reitz, *Sentencing Facts: Travesties of Real-Offense Sentencing*, 45 Stan. L. Rev. 523 (1993). By holding that the presence of the victim is an aggravating factor in a burglary, however, the majority blurs the roles of the court and the Legislature.

---

[9]Depending on the circumstances of a threat or injury the defendant may well be charged with first degree burglary.

[10]Where the Legislature has intended to distinguish seriousness levels of burglary based on the existence of a particular factor in the commission of that crime it has done so. The clearest example of this is the increased seriousness level for a residential burglary. RCW 9A.52.025(2). A burglary committed where occupants are present describes a discrete, easily identified conduct, similar to burglary of a residence, to which the Legislature could assign a greater seriousness level. However, the Legislature has not chosen to make this distinction and it is not the court's role to act in its stead.

The American Bar Association Criminal Justice Standards Committee (Committee) recently addressed this "blurring" of the legislative and judicial roles in sentencing. The Committee specifically recommended that the Legislature define offenses so that "important factors determining the gravity of offenses are made elements of the offenses rather than aggravating factors to be considered only in sentencing". *American Bar Association Standards for Criminal Justice*, 52 Crim. L. Rep. (BNA) 2353 (Mar. 17, 1993), Std. 18-3.3, *Definition of offenses; aggravating factors*. The House of Delegates subsequently adopted this recommendation in the 1993 *American Bar Association Standards for Criminal Justice*: Sentencing Alternatives and Procedures and Appellate Review of Sentences. This recommendation makes sense not only because it acknowledges the separate roles of the legislative and judicial branches in sentencing, but also because it promotes the goals recited by the Legislature in enacting the Sentencing Reform Act of 1981. In its statement of "Purpose", the Legislature cited several reasons for adopting a determinate sentencing scheme for Washington. RCW 9.94A.010. These reasons reflect a clear intent to provide certain, just, proportionate, and equal sentences to criminal defendants. When the courts create new crime categories these goals are likely to be frustrated.

My second concern in this case is with the reason given by the majority for remand. In footnote 8, the majority states that remand is required because "it is doubtful that the trial judge would have exceeded the standard range by almost six times solely because the defendant would receive one-half of a 'free' crime under the presumptive range". Majority, at 58. While I concur in this result, I would remand because the sentence is clearly excessive. RCW 9.94A.210(4). This court has been reluctant to apply the "clearly excessive" standard since rejecting the "doubling" rule in *State v. Oxborrow*, 106 Wn.2d 525, 723 P.2d 1123 (1986). This phrase has essentially existed without definition and it is time for this court to provide some guidance to trial courts attempting to impose fair and reasonable sentences.

The Court of Appeals has observed in several opinions that the length of an exceptional sentence "cannot come out of thin air.' " *State v. Barnes*, 58 Wn. App. 465, 477, 794 P.2d 52 (1990) (quoting *State v. Pryor*, 56 Wn. App. 107, 123, 782 P.2d 1076 (1989), *aff'd*, 115 Wn.2d 445, 799 P.2d 244 (1990) (quoting *State v. Wood*, 42 Wn. App. 78, 84, 709 P.2d 1209 (1985), *review denied*, 105 Wn.2d 1010 (1986))), *aff'd in part, rev'd in part*, 117 Wn.2d 701, 818 P.2d 1088 (1991). Pursuant to RCW 9.94A.120(3), trial courts are presently required to make findings and conclusions in support of exceptional sentences. The courts are not, however, required to indicate the reasons supporting the length of those sentences. Since it is likely that the length of the exceptional sentences now imposed is based on an articulable rationale, it makes sense to require the trial court to include those reasons in its conclusions.

This specific recommendation was made by the court in *Pryor* when it urged that the trial court be required to fully state the reasons "not only for imposing an exceptional sentence, but also for the length of the exceptional sentence imposed". *Pryor*, at 122-23. As the court stated, "[t]he reasons in the record can then be reviewed in a meaningful way. At the appellate level, precise articulation and identification of those reasons is necessary for review." *Pryor*, at 123.

The American Bar Association Criminal Justice Standards Committee also recognized the problems involved in appellate review when the record from the sentencing court fails to provide sufficient information. In its 1993 recommendations, the Committee proposed that trial courts be required to supply, among other things, the rationale underlying the length of exceptional sentences. Specifically, in Standard 18-5.19 the Committee stated:

> (b) The rules should provide that a sentencing court, when imposing sentence, should state or summarize the court's findings of fact, should state with care the precise terms of the sentence imposed, and should state the reasons for selection of the type of sanction and the *level of severity* of the sanction in the sentence.

(i) The statement of reasons may be relatively concise when the level of severity and type of sanction are consistent with the presumptive sentence, but the sentencing court should always provide an explanation of the court's reasons sufficient to inform the parties, appellate courts, and the public of the basis for the sentence.

(Italics mine.) *American Bar Association Standards for Criminal Justice*: Sentencing Alternatives and Procedures and Appellate Review of Sentences, Standard 18-5.19, *Imposition of sentence.*

As long as there is a role for the appellate courts to play in determining the reasonableness of an exceptional sentence, the court must find a mechanism for evaluation. As it stands now, there is no reason to find that any exceptional sentence, based on any proper aggravating factor, is "clearly excessive" as long as it does not exceed the statutory maximum. Assuming this court sees an obligation to continue reviewing the length of exceptional sentences, it is imperative that meaningful guidelines be developed.

The difficulty involved in appellate review when the trial court fails to include the reasons for imposing a particular lengthy sentence was highlighted in the recent Court of Appeals decision in *State v. Elsberry*, 69 Wn. App. 793, 850 P.2d 590 (1993). In *Elsberry*, the court reversed a sentencing decision which exceeded the standard range by eight times. In doing so, the court observed that the trial court had not explained why it had imposed a term of imprisonment for second degree assault equivalent to a standard range sentence for first degree assault. *Elsberry*, at 797. While the sentencing court had indicated a legitimate basis for imposing an exceptional sentence, in the absence of reasons explaining the length of the exceptional sentence, the Court of Appeals was left to conclude that the trial court had simply disagreed with the jury's acquittal verdict on first degree assault.

A similar concern is present here. This court is left to speculate as to the reasons for the length of the sentence imposed here, one that is six times the standard range. While the majority's remand deals with the immediate con-

cern, a sentence which is substantially out of proportion, it does not answer the problem when the trial court reimposes the same exceptional sentence based on the remaining aggravating factor(s).

While avoiding the strictures of the "doubling" rule, a requirement that the trial court state the reasons justifying the length of an exceptional sentence would not only assist the trial court in reaching a decision as to the appropriate length of the sentence, but also allow the appellate courts to begin defining "clearly excessive" and "clearly too lenient". I would remand this matter for resentencing and require the trial court to articulate the reasons for the length of the sentence if it again elects to impose an exceptional sentence.

UTTER and JOHNSON, JJ., concur with MADSEN, J.

Reconsideration denied March 24, 1994.