[Nos. 30187-3-II; 30191-1-II;    Division Two.    June 21, 2005.]
30284-5-II; 30314-1-II.

THE STATE OF WASHINGTON, *Respondent*, v. TODD TAIULU
TITIALII ET AL., *Appellants*.

*Rebecca W. Bouchey*; *Pattie Mhoon*; *Rita J. Griffith*; and *Mary Katherine High Young*, for appellants.

*Gerald A. Horne, Prosecuting Attorney,* and *Kathleen Proctor* and *John M. Neeb, Deputies,* for respondent.

¶1 ARMSTRONG, J. — Campbell Alefaio, Alaivaa "Junior" Tauese, Jr., and Fred and Todd Titialii moved for accelerated review of their exceptional sentences for conspiracy to commit perjury and first degree perjury. We vacate the exceptional sentences, holding that under recent United States and Washington Supreme Court authority, all the reasons the trial court gave for imposing exceptional sentences must be found by a jury. We remand to the trial court for further sentencing procedures in accordance with this opinion.

## FACTS

¶2 On March 29, 1997, the passenger in the front seat of a vehicle occupied by Fred Titialii, Campbell Alefaio, Ken Tuialuuluu and Alaivaa "Junior" Tauese, Jr., fired a single gunshot into a vehicle driven by Casey Harrell. The shot killed Ann Marie Harris, a passenger in Harrell's vehicle.

¶3 In their interviews with police, Fred, Campbell, Ken, and Junior all said that Campbell fired the shot. The police arrested Campbell and charged him with first degree murder.

¶4 In August 1998, shortly before trial, Campbell told his attorney that he was not the shooter and that Ken had fired the shot. Campbell explained that he had admitted the shooting to give Ken time to speak with his family and put his affairs in order. Ken was then supposed to have come forward.

¶5 Campbell's attorney interviewed Lawrence Fetui, Todd Titialii, Fred, and Junior, who also said that Ken had fired the shot; they initially had agreed to say Campbell had done it and that Campbell was taking responsibility for Ken's actions.

¶6 At his murder trial, Campbell testified that Ken had fired the shot and that he had agreed to admit to the shooting to give Ken time to say goodbye. Fred, Lawrence, and Junior also testified that Ken was the shooter. Todd testified that he thought Ken was the shooter from the way Ken talked about it afterwards. After Campbell's acquittal, the police began a perjury investigation.

¶7 As a result of this investigation, the police charged Campbell, Fred, Todd, Lawrence, and Puni Alefaio, Campbell's brother, with first degree perjury and conspiracy to commit perjury. Before trial, Lawrence agreed to plead guilty to the conspiracy charge and testify for the State.

¶8 Lawrence testified that about a week before he talked with Campbell's attorney, he met with Fred, Todd, and

Puni, who suggested that they "flip the script" and substitute Ken's name for Campbell's and to lie if called to testify in Campbell's trial. 37 Report of Proceedings (RP) at 5359. Ken also testified that Campbell fired the shot.

¶9 A jury convicted Campbell, Junior, Todd, and Fred as charged. The jury acquitted Puni on the perjury charge and could not reach a verdict on his conspiracy charge.

¶10 The trial court gave each defendant an exceptional sentence. Campbell received a 180-month sentence, Fred received a 120-month sentence, and Junior and Todd received 60-month sentences.

¶11 To support the exceptional sentences, the court found that the crimes were substantially more egregious than in typical perjury and conspiracy cases because (1) they occurred in a first degree murder case; (2) the defendants intended Campbell to escape conviction for the killing and identified an innocent person as the killer; and (3) the defendants' perjury substantially impacted the Harris family, the witnesses and their families, and the community. The court reasoned that standard range sentences were clearly too lenient in light of the Sentencing Reform Act of 1981's[1] purposes because the standard range for first degree perjury did not account for the seriousness of the proceeding in which the perjury occurred. Thus, the disparity between the sentences for perjury and murder would reward the defendants for their conduct. The court stated that it would have imposed the same exceptional sentences under any one of these factors.

## ANALYSIS

### *Blakely*

¶12 The defendants argue that the sentencing court lacked the authority to find the grounds to support an exceptional sentence, citing *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

---

[1] Chapter 9.94A RCW.

■ ¶13 In *Blakely*, the Court held that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). The statutory maximum "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303. In other words, the "statutory maximum" is the sentence a judge may impose without any additional findings, not the maximum sentence he may impose after finding additional facts. *Blakely*, 542 U.S. at 303-04. When a judge inflicts punishment that the jury's verdict alone does not allow, "the jury has not found all the facts 'which the law makes essential to the punishment' and the judge exceeds his proper authority." *Blakely*, 542 U.S. at 304 (citation omitted) (quoting 1 J. BISHOP, CRIMINAL PROCEDURE, § 87, at 55 (2d ed. 1872)). Because the facts supporting the exceptional sentence were neither admitted by Blakely nor found by a jury, the sentence violated the defendants' Sixth Amendment rights. *Blakely*, 542 U.S. at 305.

■ ■ ¶14 The trial court's second and third factors clearly violate *Blakely*. The second factor dealt with what the defendants intended by perjuring themselves; although it is reasonably obvious, the jury was not asked to and did not find beyond a reasonable doubt what the defendants intended. And the jury did not find how the perjury impacted the Harris family, the witnesses, and the community. This leaves only the trial court's finding that an aggravated sentence is appropriate because the defendants perjured themselves in a first degree murder case.

¶15 The State proved that the defendants committed the perjury and conspiracy in a first degree murder case to the jury beyond a reasonable doubt. The first element in Todd's "to convict" instruction was:

(1) That on or about the 26th or 27th day of October, 1998, TODD TITIALII made a materially false statement when he

testified that Ken Tuialuuluu was in the front passenger seat when the car from which Ann Marie Harris was shot returned to Campbell Alefaio's residence and/or when he testified that Ken Tuialuuluu admitted firing the shot that killed Anne Marie Harris.

Clerk's Papers (CP) at 166.

¶16 The first element in Campbell, Fred, and Junior's instructions was:

(1) That on or about the 26th or 27th day of October, 1998, [the defendant] made a materially false statement when he testified that Ken Tuialuuluu fired the shot that killed Ann Marie Harris.

CP at 167-69.

■■ ¶17 Thus, the State proved to the jury beyond a reasonable doubt as *Blakely* requires that the defendants perjured themselves during the first degree murder trial. But the trial court also found that because of this, the defendants' conduct was "substantially more egregious than in the typical case" and the "standard range sentence is clearly too lenient in light of the purposes of the Sentencing Reform Act." 58 RP at 8075-76.

¶18 The Washington Supreme Court recently overruled our "clearly too lenient" analysis from *State v. Van Buren*, 123 Wn. App. 634, 652-53, 98 P.3d 1235 (2004). *State v. Hughes*, 154 Wn.2d 118, 136-37, 110 P.3d 192, 202 (2005). In *Van Buren*, we held that the "free crimes" analysis is a legal inquiry that trial courts may continue to make after *Blakely*. *Van Buren*, 123 Wn. App. at 653. We reasoned that the "free crime" analysis involves legal reasoning only, combining the defendant's criminal history with the rule that substantial reasons exist automatically for an exceptional sentence when the defendant's high offender score coupled with multiple current offenses results in an unpunished crime. *Van Buren*, 123 Wn. App. at 652-53.

¶19 The Supreme Court held that we had incorrectly interpreted *State v. Smith*, 123 Wn.2d 51, 864 P.2d 1371 (1993); that *Smith* actually held that the finding of some

" 'extraordinarily serious harm or culpability resulting from multiple offenses which would not otherwise be accounted for in determining the presumptive sentencing range' was automatically satisfied." *Hughes*, 154 Wn.2d at 140 (quoting *Smith*, 123 Wn.2d at 55-56). Nonetheless, the court overruled *Smith* and held that the "too lenient" conclusion based on an unpunished current offense is a factual question for the jury to resolve. *Hughes*, 154 Wn.2d at 140.

¶20 We can find no meaningful distinction between the "too lenient" finding based on unpunished crimes and the "too lenient" finding here based on the nature of the crime at which the defendants perjured themselves. Thus, *Hughes* requires that we vacate the defendants' exceptional sentences. And although *Hughes* also held that the superior court lacks the inherent authority to convene a jury to try a jury trial issue, the legislature has now granted the superior court such authority. Because the parties have not briefed whether the legislative amendment applies to cases on appeal, we remand for further proceedings. *Hughes*, 154 Wn. App 2d at 150-52.

¶21 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN, A.C.J., and HUNT, J., concur.