IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83568-8-I |
| Respondent, | |
| v. | DIVISION ONE |
| DALE ROBERTSON MITCHELL, | UNPUBLISHED OPINION |
| Appellant. | |

DÍAZ, J. — A jury convicted Dale Mitchell of burglary and rape in 1996. The first sentencing court found several aggravating factors and imposed an exceptional sentence of 300 months for each crime, which would run concurrently. Following our Supreme Court's decision in State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021)—which invalidated Washington's felony drug possession statute, Mitchell's offender score dropped meaningfully and he sought a "new" sentence, i.e., one in which the second sentencing court would reduce the sentence and/or reconsider the aggravating factors. The second sentencing court corrected his offender score and, thus, the standard sentencing range, but declined to reconsider the aggravating factors, preserving Mitchell's exceptional sentence. Mitchell now claims that decision to not "fully" resentence him was error, as well as claiming that his Sixth Amendment rights were violated either (1) because an

.

exceptional sentence was (re)imposed by a judge and not a jury, or (2), to the extent his counsel fatally waived such an objection, that he did not receive effective assistance of counsel. We affirm the second sentencing court's decision not to reconsider the facts underlying Mitchell's exceptional sentence and hold that no other constitutional right was implicated or violated.

## I. FACTS

### A. Mitchell's 1996 Conviction

In the early morning hours of September 21, 1995, Mitchell, who was 32 years old at the time, used a ladder to climb into the bedroom of 15-year-old T.E. while she was sleeping. He ordered T.E. out of bed, robbed jewelry from her home, and forced T.E. to drink alcohol from the family liquor cabinet, all while threatening her life. He then covered T.E.'s eyes with a dark cap and led her to his car, eventually ordering T.E. into the trunk of a car until they arrived at, at the time, an unknown hotel. At some point, T.E. lost consciousness. At the hotel room, Mitchell kept T.E. in the room, where he raped her repeatedly over a period of 18 hours, again while intermittently threatening her life with a gun.

Eventually, Mitchell again forced T.E. to drink alcohol and put the cap over her eyes. He dropped T.E. off near her grandmother's home, where she called the police and went to Harborview Medical Center for a medical exam. The medical exam found signs of vaginal trauma.

A subsequent investigation found Mitchell used the same address to register for the hotel as the address listed on his parole identification card. The investigation also found a knit cap with T.E.'s hair fibers, which were also found in

the trunk of Mitchell's car. Furthermore, Mitchell's fingerprints matched those found on the window frame of T.E.'s bedroom. Finally, the DNA from semen stains on T.E.'s undergarments matched Mitchell's DNA.

Mitchell was arrested and charged with burglary and rape. The jury found him guilty on both counts.

## B. Mitchell's 1996 Sentencing and 1999 Appeal

Judge Laura Inveen presided over Mitchell's sentencing. She found that Mitchell had an offender score of 8, both for the rape and the burglary.[1] The rape in the first degree had a seriousness level of XI and, with an offender score of 8, generated a standard range of 185 to 245 months. The burglary in the first-degree had a seriousness level of VII and, with an offender score of 8, generated a standard range of 77 to 102 months.

The State sought exceptional sentences of 300 months for Mitchell's two convictions (burglary and rape), based on several aggravating factors. At the sentencing hearing, Mitchell did not object to his offender score of 8, but asked for a sentence in the standard range. Judge Inveen imposed an exceptional sentence of three hundred months on each charge.

---

[1] The score of 8 was based on (a) one prior violent offense for robbery in the first-degree in 1981, which counted as two points; (b) three prior nonviolent offenses, including two convictions for possession of controlled substances, which counted as three points; (c) one violent "other current offense," which counted as two points; and (d) an additional point because his crimes were committed while he was on community custody for a drug possession offense. The sentencing court also received a summary of several juvenile dispositions, but those offenses were not included in his score.

Shortly thereafter, Mitchell appealed his sentence to this court. State v. Mitchell, noted at 97 Wn. App 1046 (1999). This court affirmed. Mitchell, 1999 WL 760232, at *8. Notably, this court held that, although the aggravating factor of recidivism was improper, it was "satisfied from the trial court's oral and written findings that it would have imposed the same sentences based on the remaining valid reasons, i.e., deliberate cruelty based on multiple penetrations and pre-age-15 criminal history. Therefore, we uphold Mitchell's exceptional sentences." Mitchell, 1999 WL 760232, at *8. Mitchell's convictions became final on April 17, 2000.

## C. Mitchell's 2021 Resentencing

21 years later, our Supreme Court decided State v. Blake. Again, Blake invalidated Washington's simple drug possession statute, RCW 69.50.4013. Blake, 197 Wn.2d at 195. Mitchell moved the trial court under CrR 7.8 for a sentencing hearing, arguing that—because his original offender score included three drug possession-related offenses, which pursuant to Blake must be stricken—his offender score should drop from 8 to 5 and his maximum standard sentencing range should drop from 245 to 158 months and from 102 to 54 months for the rape and burglary, respectively. Specifically, Mitchell asked the trial court for an entirely "new" sentence, i.e., one in which the trial court reduced the exceptional sentence and/or would reconsider the aggravating factors.

The court granted the request for a hearing and, on January 5, 2022, the parties came before Judge Brian McDonald because Judge Inveen had since retired. Judge McDonald first accepted the State's concession and lowered

4

Mitchell's offender score to 5 and the sentencing ranges accordingly. For reasons to be discussed further below, Judge McDonald then ruled that he would "enter an order that corrects the offender score, but [he was] not going to reconsider the exceptional sentence or any other part of the sentence."

Mitchell appeals that decision.

## II.     ANALYSIS

Mitchell first argues that trial court erred in failing to conduct a "new" or "full" resentencing and that his Sixth Amendment right for a jury to determine the facts underlying the exceptional sentence was violated by the alleged proportional "increase" of his sentence. We consider the latter argument first.[2]

## A.     Sixth Amendment and Blakely

### 1. Law

In Blakely v. Washington, the United States Supreme Court held that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

---

[2] As a preliminary matter, the State argues that we should dismiss Mitchell's appeal as untimely under CrR 7.8 and RCW 10.73.090. The meaning of timeliness for collateral attacks, the definition of facially invalid sentences, and the standard for prejudice in the aftermath of Blake are in flux. For these reasons, at oral argument, Mitchell requested we stay this matter until the disposition of State v. Fletcher, 19 Wn. App. 2d 566, 497 P.3d 886 (2021), which may address some of these issues, which was accepted for review before our Supreme Court, and which the State asked us not to follow. Wash. Ct. of Appeals oral argument, State v. Mitchell, No. 83568-8-I (April 26, 2023), at 1 min., 38 sec., through 2 min., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023041317/?eventID=2023041317. We deny that oral motion and the State's invitation to decide this matter on these unstable procedural grounds. Instead, we will resolve the matter based on the arguments that are ripe and fully briefed by the parties, all in the interest of efficiency and timeliness, particularly for this litigant who has an early release date next year. RAP 12.1(a).

proved beyond a reasonable doubt.'" 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (superseded by statute on other grounds) (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

Shortly after, our Supreme Court clarified that Blakely did not apply to Washington state cases that were already final on direct review. State v. Evans, 154 Wn.2d 438, 448, 114 P.3d 627 (2005). However, in certain situations, such as when a criminal defendant's sentence was vacated, Blakely could apply on remand. See, e.g., State v. McNeal, 142 Wn. App. 777, 787, 175 P.3d 1139 (2008). As Mitchell concedes, "[t]he application of Blakely, however, becomes more complicated when an individual is entitled to resentencing."

2. Discussion

Mitchell argues that, "[w]hen Judge McDonald reimposed Judge Inveen's 300-month sentence despite Mr. Mitchell's lower offender score, he *effectively increased* Mr. Mitchell's exceptional sentence from 55 months to 142 months above the standard range," which "violated Blakely and Mr. Mitchell's Sixth Amendment jury trial right, because the increase was based on aggravating factors never found by a jury." By "effectively increased," Mitchell explains he means that it was a greater "disproportionate increase above the standard range" than the original sentence, from 18% above the original sentencing range (of 245 months) to 47% above the new lower range (of 158 months), as to the rape conviction.

This argument fails for at least two independent but related reasons. First, this court has clearly held that, even post-Blakely, a judge's decision regarding the propriety and length of an exceptional sentence is distinct from the findings of fact

underlying it, which are decided by a jury.  In re Pers. Restraint of Rowland, 149 Wn. App. 496, 511, 204 P.3d 953 (2009) ("Rowland II") (holding that the SRA "makes it a function of the trial court to decide whether to impose an exceptional sentence, and if so how long it should be").  "This feature of the statute has survived Blakely."  Id.  In other words, Judge McDonald at most decided the propriety and length of the exceptional sentence, and not the facts underlying it; thus, Blakely and the Sixth Amendment are simply not implicated.

Second, this court was confronted with somewhat similar facts, though in slightly different procedural posture, in State v. Rowland, 160 Wn. App. 316, 318, 249 P.3d 635 (2011), as corrected (Mar. 29, 2011) ("Rowland III").  There, the question was whether Blakely required "that facts supporting an exceptional sentence be tried to a jury and proved beyond a reasonable doubt on remand for resentencing from a collateral attack on a miscalculated offender score."  Id. at 319.  As is the case here, "[a]t the time of Rowland's original sentence, the law allowed a sentencing court to impose an exceptional sentence based on judicial fact-finding."  Id. at 320.  At his final resentencing, "[t]he court stated that Blakely did not apply on resentencing, and it distinguished between what it was required to reconsider on remand (the standard range sentence) from the exceptional sentence."  Id. at 321.  The trial court "reimposed" the same exceptional sentence (of 180 months) even though it was now proportionally larger than the standard range sentence vis-à-vis the new offenders score (of 2 from 3).  Id. at 322.

This court reasserted a second controlling principles, namely, that "'[c]orrecting an erroneous sentence in excess of statutory authority does not affect

7

the finality of that portion of the judgment and sentence that was correct and valid when imposed.'" Id. at 326 (citing In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 877, 50 P.3d 618 (2002)) (alteration in original). More specifically, this court held that "[a]n appellate court may remand for resentencing for an erroneous offender score but leave the otherwise valid exceptional sentence intact." Id. at 328. The trial court may then either exercise "independent judgment or discretion" in ordering an exceptional sentence or not. Id. at 329. Either way, this court held, "while the finality of Rowland's standard range sentence was disturbed by our remand for sentencing . . ., his exceptional sentence was not" and either "decision [to exercise discretion or not] does not implicate Blakely." Id. This is so, again, because "Blakely involves only the procedure to determine the factual basis of an exceptional sentence, not the decision to impose one or its length." Id.[3]

Thus, even if Judge McDonald had been explicit that he was exercising discretion and independently imposing the 300-month exceptional sentence (which will be discussed below), that still would not have implicated Blakely because the change in the offender score did not disturb the validity of the exceptional sentence.

Therefore, we hold that there was no violation of Mitchell's Sixth Amendment right to a jury trial at his resentencing before Judge McDonald

---

[3] This court in Rowland III, furthermore, found statutory support in this position, stating, "Indeed, RCW 9.94A.535 provides that where facts supporting aggravated sentences are 'determined pursuant to the provisions of RCW 9.94A.537,' the so-called 'Blakely fix,' '[t]he court *may* impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." Id. at 329-300 (alteration in original).

because he did not engage in activity implicated by Blakely.[4]

## B. Whether Trial Court Erred in Failing to Conduct "Full" Resentencing

### 1. Additional Relevant Facts

At his sentencing in 1996, Judge Inveen found "substantial and compelling circumstances for imposing an exceptional sentence" of 300 months. Specifically, the court found four aggravating factors justifying the exception sentence. First, it found that Mitchell acted with "deliberate cruelty," noting that he took T.E. from her home, family, and friends, for an extended period of time when she would not know what would happen to her. Second, it noted that he committed "multiple acts of abuse against the same victim" by having intercourse with T.E. multiple separate times over the period of 18 hours. Third, the court found that Mitchell's "criminal history of convictions prior to age fifteen is not reflected in his standard range and is a substantial and compelling reason to warrant the imposition of a sentence above the standard range." Indeed, the court was presented with dozens of encounters Mitchell had had with law enforcement prior to these charged crimes, in addition the convictions and dispositions above. Fourth, and finally, the court noted that Mitchell's "repeat recidivism" warranted issuing a sentence above the standard range.

---

[4] In turn, Mitchell's sentencing counsel did not violate his Sixth Amendment right to effective assistance of counsel because, for the reasons provided above, his counsel was correct (and thus not "deficient") when he stated that Blakely was not applicable in this case, even if the record does not contain the same or full reasoning behind this statement. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (superseded by statute on other grounds).

Judge Inveen further noted that any one of the above reasons would have been sufficient to warrant an exceptional sentence. She added, "In the event that an appellate court affirms at least one of the substantial and compelling reasons, the length of the sentence should remain the same so there is no need for a remand."

Finally, Judge Inveen further explained her reasoning:

> It is clear, Mr. Mitchell, that you do not believe that the rules of society apply to you. In this particular case, unfortunately, I cannot hope that any sentence I give will result in rehabilitation of you. It is clear from your past behavior and incarcerations that that has not occurred, and I can't hope that it will occur in the future. Unfortunately, the only purpose of this sentence will be to punish you, and to protect society. As a result, I do find that the recommended sentence as recommended by [the State] is appropriate. I am going to impose the three hundred months on each charge.

At his resentencing in 2021, besides correcting his offender score post-Blake, Mitchell asked the trial court for an entirely "new" sentence, i.e., one in which the trial court reduced the exceptional sentence and/or would reconsider the aggravating factors. Specifically, prior to and at the hearing, Mitchell asked that his sentence be changed to 213 months–which was comprised of the high end of the new high-end standard range (of 158 months) plus the same absolute length of the 1996 exceptional sentence above the old standard range (of 245 months), namely 55 months, with credit for time served at the time of 312 months. As an alternative, Mitchell asked that the court simply "reconsider Mr. Mitchell's original sentence" and sentence him to the current high-end range, thereby striking the original exceptional sentence, again with credit for 312 months. He argued that a "total resentencing" was appropriate because of his history of childhood neglect,

because his criminal history was disputed, and because the extant aggravating factors (deliberate cruelty with multiple penetrations) and his unscored juvenile history did not justify such a long exceptional sentence, given the changes in juvenile law.[5]

For its part, the State conceded that, because Blake vacated the three drug-related convictions, which were originally used to calculate Mitchell's offender score, that Mitchell's standard sentencing range should be revised. However, the State did not agree that revising Mitchell's sentencing range required a de novo review of his *entire* sentence. Instead, the State argued that the hearing was "essentially ministerial and [did] not require the Court to exercise discretion" and that the "exceptional sentence imposed by the sentencing court should remain intact."

After accepting the concession on the offender score and standard range, Judge McDonald first explained the scope of his initial review, stating that he had "carefully looked over the record here to see what Judge Inveen said, what was done in the sentencing, and what the reasons were for that." He then found that "a resentencing is not . . . justified because the exceptional sentence imposed by Judge Inveen was really not based on Mr. Mitchell's offender's score."

Judge McDonald explained that "Judge Inveen gave the exact same 300-month sentence on both counts which had extremely different ranges. In fact, . . .

---

[5] To the extent it was suggested, we need not to reach any issue related to Mitchell's juvenile record because any such argument, while referenced, was insufficiently developed. RAP 12.1(a); State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) ("This court will not consider claims insufficiently argued by the parties.").

the amount added on to the burglary charge was substantial. And, frankly, reading Judge Inveen's comments, it's clear she thought the 300 [months] was warranted by the deliberate cruelty inherent in the crime."

He further added that "Judge Inveen went out of her way to protect the 300-month sentence by finding three different aggravating circumstances, one of which got struck down, and then made a finding that she would impose the same sentence based on any one of them individually . . . [which] she didn't need to do at all."

In short, the resentencing court found that he had "no doubt that she would still stand by and impose the same sentence," given the "pretty stark" comments Judge Inveen made. Thus, the trial court reimposed the 300 month exceptional sentences.

2. Law

The Sentencing Reform Act of 1981 (SRA) "imposes a regime of structured discretion." State v. Parker, 132 Wn.2d 182, 186, 937 P.2d 575 (1997). "The SRA contemplates the sentencing court will, in most cases, impose a standard range rather than an exceptional sentence." Id. "The sentencing court may impose a sentence outside the standard sentence range if it finds substantial and compelling reasons to justify an exception." Id. at 187.

When imposing an exceptional sentence, "the court must first consider the presumptive punishment," i.e., the standard range, "before it may adjust it up or down to account for the compelling nature of the aggravating or mitigating circumstances of the particular case." Id. In other words, our Supreme Court has

held that "the sentencing court must first correctly determine the standard range before it can depart therefrom. The SRA and case law mandate this conclusion." Id. at 188.

In turn, "[w]hen the sentencing court exercises its discretion within the structured confines of the SRA, review of its sentences is limited." Id. However, when the sentencing court acts outside the structure set by the SRA, the appellate court may review any such departure. Id. One example of acting outside the structure of the SRA is the failure to "correctly calculate the standard range before imposing an exceptional sentence," which "is legal error subject to review." Id. at 189.

Furthermore, "remand is the remedy" when the sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, importantly, "*unless* the record *clearly indicates* the sentencing court would have imposed the same sentence anyway." Id. (emphasis added).

In Parker, the trial court found an incorrect standard range at sentencing. Id. at 192. This court then held the error was harmless because it was "confident" the trial court would impose the same sentence if it were to remand the matter for resentencing. Id. Our Supreme Court disagreed, finding it "likely the exceptional sentence was based directly on the incorrect standard ranges" because "the sentencing court imposed a high-end standard range sentence for each count and then ran the two consecutively as an exceptional sentence." Id. The Court concluded that the "record does not *expressly demonstrate* the sentencing court would have imposed the same exceptional sentence *without regard to the length*

13

*of the standard ranges.*" Id. at 193 (emphasis added); see also State v. Jennings, 106 Wn. App. 532, 544, 24 P.3d 430 (2001) (finding the error in the offender score was not harmless, in part, because, despite the court's focus on the aggravating factors, the trial court noted the correct sentencing range).

In contrast, this court in State v. Rowland (Rowland III) was again confronted with an incorrect offender score and, yet, held there was a "clear basis for concluding that if Rowland's offender score had been correctly calculated and the standard range correctly determined, the resentencing court would have imposed the same exceptional sentence." Rowland III, 160 Wn. App. at 333. It quoted from the trial court's oral ruling, stating:

> There's come a point where you just say *enough is enough.* And I'm at that point. If the scoring range is determined to be a one rather than a two, which I'm concluding that it is now, the sentence that I imposed today would be the same sentence that I would impose if it came back in front of me. So *in essence* the exceptional sentence would increase.

Id. Thus, this court affirmed the exceptional sentence and remanded only to correct the offender score and standard range. Id. at 334

3. Discussion

Mitchell implicitly acknowledges that, if the record from his original sentencing hearing clearly indicates that Judge Inveen would have imposed the same exceptional sentence based on a significantly lower standard range, then he is not entitled to a "full" resentencing. More explicitly, Mitchell concedes that Judge McDonald was "correct that the proper course was to evaluate the record from that hearing." Mitchell, however, argues that Judge McDonald either did not recognize or appreciate the Parker court's "exacting" standard or misapplied the standard. In

particular, Mitchell argues that this "case does not expressly demonstrate Judge Inveen would have imposed the same exceptional sentence despite the significantly lower standard range," although he concedes that Judge Inveen "emphasized the aggravating factors" above and "did not specifically reference Mr. Mitchell's offender score or standard range."

Here, we conclude that Judge McDonald did not err when he found that the record clearly demonstrated that Judge Inveen would have issued the same exceptional sentence regardless of the change in Mitchell's offender score, for at least three reasons.

First, Judge Inveen noted that she thought any hope of rehabilitation would be futile, stating in part, "It is clear from your past behavior and incarcerations that [rehabilitation] has not occurred, and I can't hope that it will occur in the future." Instead, she clearly described the penological intent of her sentence, which was to punish Mitchell for his actions and deter him from committing similar actions in the future, stating, "Unfortunately, the only purpose of this sentence will be to punish you, and to protect society." At oral argument, Mitchell's counsel was right to acknowledge as much. Wash. Ct. of Appeals oral argument, State v. Mitchell, No. 83568-8-I (April 26, 2023), at 8 min., 3 sec., through 8 min., 11 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023041317/?eventID=2023041317. There is nothing in these words to suggest that the reduction of three points from Mitchell's offender score, each related to non-violent offenses, would diminish Judge Inveen's retributive intent or upend her

goal of specific deterrence.

Second, Judge Inveen signaled her added goal of finality, when noting that, even if one of the aggravating factors were reversed but "an appellate court affirms at least one of the substantial and compelling reasons, the length of the sentence should remain the same so there is no need for a remand." Interestingly, this is what occurred: this court struck one of the aggravating factors (recidivism), but held that Judge Inveen would have imposed the same sentences based on the remaining aggravating factors and, thus, upheld Mitchell's exceptional sentences. Mitchell, 1999 WL 760232, at *4-5. And again, there is nothing in the record to suggest that her express goal of finality would be affected by changes to his offender score. She clearly wanted to avoid the kind of remand Mitchell requests.

Mitchell argues that, because Judge Inveen "made no similar indication . . . that she would impose the same 300-month sentence even if Mr. Mitchell's offender score and standard range sentence were significantly lower," her intent was unclear. To expect a court to make a similar express finding about any way a sentence could change (in order to find that a sentencing judge would have not deviated from her exceptional sentence) would demand an omniscience and thoroughness we do not expect of our trial courts. Here, we do not and should not expect our trial courts to have anticipated Blake or any of the other myriad ways a sentence could be affected by changes in the law.

Third, the record in this matter is different than the record in the several cases to which Mitchell cites.

In Parker, the sentencing court based, or formulaically derived, its

16

exceptional sentence on the standard range. Parker, 132 Wn.2d at 193. Here, the standard range was not used as a metric or rubric from which the exceptional sentence was derived.

The record here is also different from Jennings, where there was at least some reference to the standard range in the court's oral ruling. Jennings, 106 Wn. App. at 544. The original sentencing court here did not make even a passing reference to the sentencing range in her oral ruling, as Mitchell does and must acknowledge.

Further, the record is different than in State v. Weller, 185 Wn. App. 913, 928, 344 P.3d 695 (2015). In that case, there were only two aggravating factors, one of which was invalidated. Id. at 930-31. This court there found that "the record is unclear as to how the trial court would have sentenced the Wellers if it had not considered the ongoing pattern aggravating factor." Id. Even if we were now to look skeptically at the reference to Mitchell's lengthy juvenile history, two aggravating factors remain, including the court's finding of deliberate cruelty and the fact of multiple penetrations. And, indeed, it was those two factors on which Judge Inveen focused much of her oral ruling, emphasizing that the rape and kidnapping were "different" and that the victimization of this "teenage girl" was multi-faceted.

Instead, the record here is as close to the facts in Rowland III as one can reasonably expect. There, in providing the rationale for its ruling, the trial court stated that "[t]here's come a point where you just say enough is enough. And I'm at that point. If the scoring range is [lower than] it is now, the sentence that I

17

imposed today would be the same sentence that I would impose if it came back in front of me. So in essence the exceptional sentence would increase." Rowland III, 160 Wn. App. at 333. We found the sentencing judge's intent to be clear based in part by that statement of hope for finality. Id.

Here, Judge Inveen effectively declared the same when stating "the length of the sentence should remain the same so there is no need for a remand," regardless of the legal maneuverings that may come down the road, expressing her hope for finality.

By way of final argument, Mitchell argues that, if this court permits the absolute term of the exceptional sentence to stand (at 300 months), then there would be, not just some, but a "great" proportional disparity between the length of the original rape sentence (55 months) and the new rape sentence (142 months) as compared to their respective standard ranges. Based on this disparity alone, Mitchell argues we should find the "great disparity here casts further doubt as to whether Judge Inveen would have imposed the same exceptional sentence." Mitchell cites two cases, State v. Smith and State v. Dunaway, in support of this argument, neither of which we find controlling.

In Smith, our Supreme Court clarified that it could impose sentences that were both concurrent or consecutive when choosing to impose a sentence that was exceptional. "[It] is permissible to impose an exceptional sentence which includes both sentencing components." State v. Smith, 123 Wn.2d 51, 58, 864 P.2d 1371 (1993), overruled on other grounds by State v. Hughes, 154 Wn.2d 118, 110 P.3d 192 (2005) (abrogated on other grounds). However, the court opted to

18

remand the duration of Smith's sentence because, citing Dunaway, "[g]iven the great disparity between the presumptive sentence and the exceptional sentence, it is unclear whether the trial judge would have imposed the same sentence had he considered only the two valid aggravating factors. In such an instance, a remand is appropriate." Id. (citing State v. Dunaway, 109 Wn.2d 207, 219-20, 743 P.2d 1237 (1987).

As noted above, it is true that, if the 300 month exceptional sentence is allowed to stand, Mitchell's sentence will be 47% above the new lower high-end range (of 158 months), as opposed to 18% above the original high-end sentencing range (of 245 months). However, there is no authority holding that such a proportionate disparity is a "great disparity," per se error, or an important, let alone, dispositive factor in determining the intent of the original sentencing judge. Where briefing has not provided cases, we will assume counsel has found none. State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) (citing State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d 348 (2017)). Instead, per Parker, we hold that a court should examine the record as a whole to determine whether it clearly demonstrates the intent of the sentencing judge. Parker, 132 Wn.2d at 189.

On that metric, as Judge McDonald noted, it is telling that Judge Inveen issued the same large round number (300 months) for two different convictions with distinctly different minimum sentence ranges from each other. Indeed, Mitchell's counsel acknowledged that the big round number "is a factor that weighs against Mr. Mitchell." Wash. Ct. of Appeals oral argument, supra at 3 min., 59 sec. through 4 min., 35 sec. As Judge McDonald stated, "the amount added on to the

19

burglary charge was substantial." In Judge Inveen's oral ruling, there did not appear to be any consideration of the relative or proportional differences in the standard ranges *between* the two very different crimes. On this record, we conclude we would be reading into the record a concern with proportionality that is not present therein, were it to be swayed by mere percentages.

Finally, we recognize that this sentence was imposed almost thirty years ago and the rationale underlying it may be different than one a trial court may or should use today, with the benefit of hindsight or changed laws, particularly with respect to how we treat juvenile crime. However, under the analytic framework offered by Mitchell, those issues are not before us today. Our inquiry in the present framework is limited to whether the record clearly demonstrates that a changed offender score would not have affected the outcome of a full sentencing before the original trial judge. Here we conclude the record clearly demonstrates that Judge Inveen's sentence would not have been different. As such, Judge McDonald committed no error.

## C.     STATEMENT OF ADDITIONAL GROUNDS

Although Mitchell was represented by counsel at the hearing before Judge McDonald, he made his own statement to the court. In pertinent part, Mitchell objected to procedural issues in his original trial, and mentioned that he had a disability and no intent to re-offend.[6]

---

[6] Mitchell also stated he did not receive adequate assistance in his defense at trial and that his intercourse with T.E. was consensual, stating "there was drugs and alcohol used. It was consensual; that is my argument." As these issues were resolved at his first direct appeal, they are not reconsidered here.

In addition to his attorney's briefing on appeal, Mitchell submitted a statement of additional grounds. Statements of additional grounds are permitted by RAP 10.10. They serve to ensure that an appellant can raise issues in their criminal appeal that may have been overlooked by their attorney. Recognizing the practical limitations many incarcerated individuals face when preparing their own legal documents, RAP 10.10(c) does not require that the statement be supported by reference to the record or citation to authorities. However, it does require that the appellant adequately "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). It also relieves the court of any independent obligation to search the record in support of the appellant's claims, making it prudent for the appellant to support their argument through reference to facts. RAP 10.10(c). To enable that factual support, it provides the means for appellants to obtain copies of the record from counsel. RAP 10.10(e).

In those sections of his statement of additional grounds for review which have not been addressed above or are not duplicative of his appellate counsel's arguments, Mitchell claims (1) ongoing racial profiling by law enforcement during his youth led to an incorrectly calculated sentence; (2) ongoing "government intrusion" created a conflict of interest for his original public defender in 1996, preventing a fair and impartial hearing; and (3) Mitchell's objection to his lack of community placement. We address each in turn.

1. Juvenile racial profiling

Mitchell alleges that some of the juvenile charges against him are false because he did not commit certain robberies when he was a juvenile, contrary to

21

the record before the court in 2022. Mitchell further contends that 90 per cent of his juvenile record is false, and the result of racism perpetuated against African American youths by the Seattle Police Department in the 1970s and 80s. According to Mitchell, the falsification of his prior record is an example of intentional collusion within the criminal justice system and entire legal community to deny his rights to a fair legal proceeding.

We conclude that we do not have adequate information before us in the record, or in this Statement of Additional Grounds, to determine whether Mitchell's early juvenile record was falsified. Whether or not that is the case, Mitchell did not provide facts to support the assertion that the juvenile offenses in the record were intentionally added in order to prevent him from having a fair trial and sentencing. Under RAP 10.3(a)(6), an appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Arguments that are not supported by references to the record, meaningful analysis, or citation to pertinent authority need not be considered. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). "It is not the responsibility of this court to attempt to discern what it is appellant may have intended to assert that might somehow have merit." Port Susan Chapel of the Woods v. Port Susan Camping Club, 50 Wn. App. 176, 188, 746 P.2d 816 (1987).

2. Alleged conflict of interest

In his second argument, Mitchell alleges "government intrusion," "continuous denial" of rights to fairness in different proceedings before, during, and

after his trial, and a "conflict of interest" with his original public defender in 1996, Anita Moceri. We conclude such arguments are not supported by the record.

Mitchell alleged that at his original trial in 1996, Moceri violated his confidence by sharing a factual summary of the events of the burglary and rape with the prosecution. Mitchell believes that this action by Moceri prejudiced the record against him in subsequent proceedings. Mitchell believes the prejudice from this event in 1996 was part of the foundation for his original sentence, and still prejudiced the court in his 2022 resentencing. According to Mitchell, such a prejudice is a violation of his rights under Article I, § 22 and Article I § 3 of the Washington State Constitution and the 14th and 16th Amendments of the United States Constitution.

This argument refers to and, presumably, corresponds with an attached exhibit, Exhibit 1. Mitchell alleged that he gave confidential information to his public defender, who copied it and gave it to the prosecution, which Moceri disputed. Later, Moceri filed a motion to withdraw from representing Mitchell. According to Moceri, it became impossible for her to adequately represent Mitchell for several reasons:

> [B]ecause Mr. Mitchell changes his story with such consistent regularity, and because he has insisted that he will testify, I am facing two possibilities: number one, that he will testify as to something which I am totally unaware; and, number two, that I will unwittingly be suborning perjury. The fact that he is now denying any sexual conduct with the alleged victim also makes it impossible to use the stipulation which I entered into with Ms. Johnson. That is the majority of my conflict, your Honor. It is not a conflict based on my client's manipulation of me. It's a conflict between me and my client that requires my withdrawal.

Mitchell generally characterizes these circumstances as government

23

"intrusion" and "collusion." However, although he raised factual issues that may have been relevant in some way to his original trial, he does not provide factual support for any intent by specific actors or the justice system as a whole to find against him. "We do not consider conclusory arguments that are unsupported by citation to authority. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Brownfield v. City of Yakima, 178 Wn. App. 850, 876, 316 P.3d 520 (2014) (internal citations omitted).

### 3. Community placement

Mitchell generally contends that his underlying sentence and lack of community placement is unfair and he is entitled to resentencing under the Due Process Clause of the 14th Amendment. He does not provide support for this assertion in the record or case law. Under RAP 10.3(a)(6), we do not consider this argument.

### III.    CONCLUSION

We affirm Judge McDonald's decision not to reconsider the facts underlying Mitchell's exceptional sentence and hold that no other constitutional right was implicated or violated.

Díaz, J.

WE CONCUR:

Birk, J.

Dwyer, J.